# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 12-2017

JIMMY H. FLOORE, APPELLANT,

V.

ERIC K. SHINSEKI,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued September 10, 2013                                    Decided November 5, 2013)

*Matthew J. Ilacqua*, of Providence, Rhode Island, with whom *Zachary M. Stolz*, of Providence, Rhode Island, was on the brief, for the appellant.

*Lavinia A. Derr*, with whom *Will A. Gunn*, General Counsel, *R. Randall Campbell*, Assistant General Counsel, *Richard Mayerick*, Deputy Assistant General Counsel, all of Washington, D.C., were on the brief for the appellee.

Before KASOLD, *Chief Judge*, and BARTLEY and GREENBERG, *Judges*.

KASOLD, *Chief Judge*, filed the opinion of the Court. BARTLEY, *Judge*, filed a separate opinion concurring in the result.

KASOLD, *Chief Judge*: Veteran Jimmy H. Floore appeals through counsel a May 25, 2012, decision of the Board of Veteran's Appeals (Board) that denied entitlement to a total disability rating based on individual unemployability (TDIU) due to multiple service-connected disabilities. Mr. Floore primarily argues that, for a claimant with multiple service-connected disabilities, a medical opinion addressing the combined effects of all service-connected disabilities is required for the Board to render a decision on entitlement to TDIU, and the Board erred by not securing such an opinion in his case and by not explaining why it did not secure such an opinion. He also argues that the Board inadequately explained why it denied TDIU entitlement. The Secretary disputes these arguments. For the reasons stated below, Mr. Floore's primary argument fails, but the Court finds that the Board inadequately explained its denial of TDIU and will set aside the Board decision and

remand the matter for further adjudication.[1]

## I. FACTS

Mr. Floore served on active duty from October 1963 to November 1966. It is not clear from the record of proceedings (ROP)[2] what he did from 1966 to 1977, but he reportedly worked in the trucking business from 1977 to 1990, when he fell out of a truck and injured his back and quit working. The ROP does not reflect when Mr. Floore initially filed for VA compensation benefits, but about 16 years after he quit working, in November 2006, he filed for increased compensation based on TDIU.

Before the Board, Mr. Floore argued that he should be awarded TDIU or his claim should be remanded for further development, to include obtaining a medical opinion as to whether his service-connected disabilities prevented him from obtaining substantially gainful employment. The Board recognized that he has a combined disability rating of 90%, with individual disability ratings as follows: (1) 20% for diabetes mellitus, effective July 22, 2003; (2) 10% for coronary artery disease, effective July 4, 2003 (with a temporary 60% rating from July 28, 2006, to December 1, 2007); (3) 30% for post-traumatic stress disorder (PTSD), effective October 14, 2003; (4) 0% for erectile dysfunction, effective October 14, 2003; (5) 10% for peripheral neuropathy of the right and left lower extremities, effective April 3, 2006, with an increase to 20% for each, effective July 17, 2007; and (6) 20% and 30% for peripheral neuropathy of the left and right upper extremities, respectively, effective July 17, 2007.

With regard to the request to obtain a medical opinion, the Board noted that the record

---

[1] This case was sent to panel because Mr. Floore's primary argument presented an issue of first impression. While this opinion was circulating for review and comment pursuant to the Court's Internal Operating Procedure (IOP) V(d), the U.S. Court of Appeals for the Federal Circuit issued its opinion in *Geib v. Shinseki*, __ F.3d __, No. 2012-7164 (Fed. Cir. Oct. 29, 2013), which also addresses whether the Secretary is required to obtain a single medical opinion assessing the aggregate effect of all service-connected disabilities to properly decide entitlement to TDIU. *Id.*, __ F.3d at __, slip op. at 6-7. This opinion is consistent with the *Geib* decision, but it addresses several theories in support of Mr. Floore's primary argument that are not addressed in *Geib*; this opinion also makes it clear that the need for a medical opinion addressing the combined effects of all service-connected disabilities is to be determined on a case-by-case basis. Accordingly, it remains appropriate to issue the opinion as a precedential panel decision. *See Frankel v. Derwinski*, 1 Vet.App. 23, 26 (1990); IOP I(b)(2) and (4).

[2] The ROP is prepared by the parties and contains "any document from the record before the agency cited in a brief," and "any other documents before the Secretary and the Board that are relevant to the issues before the Board that are on appeal to the Court or relevant to issues otherwise raised in the appeal." U.S. VET. APP. R. 28.1.

contained several medical examination reports, including reports from October 2006, January 2008, and May 2010. The Board found that these reports reflected that the examiners "reviewed [Mr. Floore's] past medical history, recorded his current complaints, conducted . . . appropriate examination[s], and rendered appropriate findings so as to allow the Board to ascertain the impact of [Mr. Floore's] disabilities on his employability." Record (R.) at 6. The Board found the medical reports adequate for decision and the duty to assist satisfied.

As to the merits of the claim, the Board found that Mr. Floore met the percentage rating requirements for TDIU established in 38 C.F.R. § 4.16(a) (2013), but found that Mr. Floore's service-connected disabilities did not render him unemployable. In support of its finding, the Board noted that Mr. Floore was employed as a truck driver until 1990, when he hurt his back and retired because of that injury. The Board also noted that Mr. Floore was receiving Social Security disability benefits based on his back disability and an ankle disability, neither of which was service connected, and further noted a 1993 evaluation by the Illinois Department of Rehabilitation Bureau of Disability Determinations that stated Mr. Floore could no longer work in his former employment, but could work in a sedentary job with little walking.

With regard to his service-connected disabilities, the Board noted that Mr. Floore initially explained that his coronary heart disease was the primary reason he could not work, but the Board further noted that the October 2006 medical examination report reflected that Mr. Floore's limitations were due to disabilities other than his heart disability, including right-shoulder, leg, thigh, and back pain. The Board further noted that, as his claim was being adjudicated, Mr. Floore contended that his peripheral neuropathy of the lower extremities rendered him incapable of working, but the Board gave greater weight to the January 2008 medical examination report, which reflected mild impact on activities such as shopping, recreation, and traveling, with no limitation on personal matters such as bathing, dressing, and eating.

After noting that Mr. Floore did not contend that his PTSD rendered him unemployable, the Board nevertheless addressed this possibility, but further noted that the May 2010 medical examination report reflected only moderate difficulty in social and occupational functionality, and found that Mr. Floore's PTSD did not render him unemployable.

The Board also recognized that Mr. Floore would be entitled to TDIU if the combined effect

3

of his disabilities rendered him unemployable, but concluded that the absence of any significant symptoms associated with his heart condition and moderate impairment associated with his peripheral neuropathy and PTSD weighed against a finding that his service-connected disabilities rendered him unemployable.

## II. ANALYSIS

As noted above, in addition to arguing that a combined-effects medical examination report or opinion was necessary to render a proper decision, Mr. Floore also argues that the Board (1) provided no statement of reasons or bases for its determination that a combined-effects medical examination report was not required to decide his claim, and (2) provided inadequate analysis as to why it determined that his service-connected disabilities did not prevent him from obtaining substantially gainful employment.

### A. Requirement for a Combined-Effects Examination Report

In support of his primary argument, Mr. Floore correctly notes that a veteran is entitled to assistance from the Secretary in developing his claim and that a medical examination report or opinion is required by 38 U.S.C. § 5103(a)(1) and (d) when necessary to decide the claim. Mr. Floore relies on various authorities to conclude that a combined-effects medical examination report or opinion is necessary to properly decide entitlement to TDIU for a veteran with multiple service-connected disabilities. None of these authorities, however, stands for such an absolute proposition. *See also Geib v. Shinseki*, __ F.3d __, No. 2012-7164 (Fed. Cir. Oct. 29, 2013).

In *Gary v. Brown*, 7 Vet.App. 229, 232 (1994), whether a combined-effects examination was required or even advisable apparently was not briefed and the Court did not address that specific issue. *Gary* states that "when a TDIU claim is presented, a VA examining physician should *generally* address the extent of functional and industrial impairment from the veteran's service-connected disabilities," *Gary*, 7 Vet.App. at 232 (emphasis added). Although such an examination generally might be required, *Gary* does not hold that it *always* is required, or, more importantly, that there must be a single medical report or opinion that addresses all service-connected disabilities. Indeed, the appellant in *Gary*, like Mr. Floore, had multiple service-connected disabilities, and the Court affirmed the Board decision that relied, in part, on medical examination reports separately addressing Mr. Gary's physical disabilities and psychiatric disabilities.

4

Likewise, in *Friscia v. Brown*, 7 Vet.App. 294 (1994), the Court did not address the specific issue Mr. Floore raises here. The matter was remanded for the Board to obtain – under the circumstances of that case, i.e., where the Board offered its own opinion and the record contained no "independent opinion" or other record evidence that the veteran was able to work – a medical examination report concerning the effect of Mr. Friscia's single disability, PTSD, on his ability to work. *Friscia* reflects that the need for a medical examination report on the effects of a disability on the ability to work is predicated on the circumstances of each case. Additionally, *Friscia* involved TDIU based on a single disability and does not support Mr. Floore's argument that a single medical examination report or opinion addressing multiple disabilities is required as a matter of law, regulation, or policy. Similarly, *Cathell v. Brown*, 8 Vet.App. 539, 545 (1996), involved a single service-connected disability, and the perceived need for a medical examination was predicated on the "unusual circumstances" in that case, which included the Board's failure to provide adequate reasons or bases for finding the veteran not unemployable and the Board's failure to ensure compliance with a prior Board remand.

Mr. Floore also cites, but does not discuss, *Martin (Roy) v. Brown,* 4 Vet.App. 136, 140 (1993), a case involving multiple service-connected conditions. There, the Court found the record inadequate as to unemployability because the Secretary had not obtained all of Mr. Martin's medical records, and because the medical examination report relied on by the Board in making its decision was rendered without benefit of those medical records. *Id.* at 139-40. The Court remanded the matter for the Board to obtain the missing records and a new medical examination report that was based on a review of all past medical records, instructing that the examination "be conducted so as to assist the [regional office] and the [Board] to address the applicability of functional impairment pursuant to 38 C.F.R. § 4.10." *Id.* at 140. Although *Martin* is informative in requiring that an examiner address functional impairment as required by § 4.10 when entitlement to TDIU is at issue, that case did not purport to address whether a combined-effects examination is always required in TDIU cases involving multiple service-connected disabilities.

Mr. Floore submitted as supplemental authority a copy of VA Fast Letter 13-13, which became effective June 17, 2013. To the extent this Fast Letter might be deemed instructive as to the Secretary's policy prior to its issuance and at the time of the Board decision on appeal, Mr. Floore's

reliance on it is misplaced with regard to his proposition that a combined-effects medical examination *always* is required in all cases involving potential entitlement to TDIU and multiple service-connected disabilities. Indeed, the Fast Letter specifically states that "VA is not required to provide a general medical examination in connection with every TDIU claim." To be sure, the Fast Letter indicates that a general medical examination should be obtained in "TDIU claims involving the impact of multiple service-connected and/or nonservice-connected disabilities upon employability," but this provides guidance; it does not direct. Moreover, read as a whole, the Fast Letter leaves it to the rating activity to determine the need for a medical examination report or opinion "if the information and evidence of record does not contain sufficient competent medical evidence to decide the claim." *Cf. Gary*, 7 Vet.App. at 231-32 ("There is no statute or regulation which requires the Secretary . . . to use experts to resolve the issue of unemployability."). Indeed, this Fast Letter is consistent with VA regulations and applicable caselaw regarding the duties of medical examiners and rating officials.

For example, medical examiners are responsible for providing a "full description of the effects of disability upon the person's ordinary activity," 38 C.F.R. § 4.10 (2013), but it is the rating official who is responsible for "interpret[ing] reports of examination in the light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability present," 38 C.F.R. § 4.2 (2013). More specifically, TDIU is to be awarded based on the "judgment of the rating agency" that the veteran is "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities." 38 C.F.R. § 4.16(a). Indeed, we have noted these distinctive responsibilities of medical examiners and rating officials in *Moore v. Nicholson*, 21 Vet.App. 211 (2007), *rev'd on other grounds sub nom. Moore v. Shinseki*, 555 F.3d 1369 (Fed. Cir. 2009), and *Monzingo v. Shinseki*, 26 Vet.App. 97 (2012).

In sum, the need for a combined-effects medical examination report or opinion with regard to multiple-disability TDIU entitlement decisions is to be determined on a case-by-case basis, and depends on the evidence of record at the time of decision by the regional office (RO) or the Board. This is not to say that a combined-effects medical examination report or opinion likely would not be helpful to the proper adjudication of entitlement to TDIU for a veteran with multiple service-

6

connected disabilities, but such an examination is not required per se as a matter of statute, regulation, or policy.

Of note, Mr. Floore did not argue in his briefs to the Court how the record medical reports were inadequate for Board decision, other than to assert that none of them addressed the combined effects of his service-connected disabilities on his ability to obtain substantially gainful employment. Although at oral argument he expressed concern with the amount of time that lapsed between the examinations, he did not further develop this argument. *See Locklear v. Nicholson*, 20 Vet.App. 410, 416 (2006) (rejecting perfunctory and underdeveloped argument presented by counsel as "far too terse to warrant detailed analysis by the Court"); *see also Fugere v. Derwinski*, 1 Vet.App. 103, 105 (1990) ("Advancing different arguments at successive stages of the appellate process does not serve the interests of the parties or the Court. Such a practice hinders the decision-making process and raises the undesirable specter of piecemeal litigation.").

### B. Reasons or Bases

#### 1. Combined Effects Examination

Contrary to Mr. Floore's specific argument – as presented in his brief – that the Board did not explain why a combined-effects examination report or opinion was not needed, the Board explained that such a medical examination report or opinion was not needed because the record medical reports provided sufficient information for the Board to render a decision. As noted above, Mr. Floore failed to develop any argument regarding any deficiency in the record medical evidence, except to argue that there was no single medical examination report or opinion addressing the combined effects of his service-connected disabilities.

#### 2. Denial of TDIU

Although we hold above that a combined-effects medical examination report or opinion is not required per se by statute, regulation, or policy to properly decide entitlement to TDIU for a veteran with multiple service-connected disabilities, the Board nevertheless must adequately explain how the record evidence supports its determination that the combined effects of multiple disabilities do not prevent substantially gainful employment. 38 U.S.C. § 7104(d)(1); *Beaty v. Brown*, 6 Vet.App. 532, 537 (1994) ("Where the veteran submits a . . . claim for a TDIU rating . . . the [Board] may not reject that claim without producing evidence, as distinguished from mere conjecture, that

the veteran can perform work that would produce sufficient income to be other than marginal."). Here, the Board rather curtly noted that Mr. Floore's 90% disability rating "recognizes very severe industrial impairment resulting from his disorders," but then it discounted this recognition by noting "the absence of significant symptoms associated with [Mr. Floore's] heart disorder, and the moderate nature of impairment associated with his peripheral neuropathy and PTSD." R. at 12. The Board then "concludes that the preponderance of the evidence is against finding his service-connected disabilities are of such severity so as to preclude his participation in any form of substantially gainful employment." *Id.*

Although the Board recognized that the cumulative effects of service-connected disabilities can prevent substantially gainful employment, the Board addressed the effects of Mr. Floore's disabilities individually, and never explained what the cumulative functional impairment of all his service-connected disabilities might be and why they do not prevent substantially gainful employment.

Moreover, although Mr. Floore did not raise this issue in his brief, we note that the Board failed to address what appears to be potentially favorable and material evidence. *See Thompson v. Gober*, 14 Vet.App. 187, 188 (2000) (Board must address material evidence potentially favorable to the claimant); *see also U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am.*, 508 U.S. 439, 447 (1993) ("[A] court may consider an issue 'antecedent to . . . and ultimately dispositive of' the dispute before it, even an issue the parties fail to identify and brief." (quoting *Arcadia v. Ohio Power Co.*, 498 U.S. 73, 77 (1990))). For example, the October 2006 VA examination report addressing Mr. Floore's coronary artery disease reflects that Mr. Floore's heart condition had a severe effect on exercise and ability to engage in sports, which potentially can indicate some adverse occupational effects, but the Board never addressed this reasonably raised possibility. *See Robinson v. Peake*, 21 Vet.App. 545, 552 (2008) (Board must address issues raised by claimant or reasonably raised by record), *aff'd sub nom. Robinson v. Shinseki*, 557 F.3d 1355 (Fed. Cir. 2009); *Thompson*, *supra*. Further, although the Board noted that the October 2006 examination report reflected that some of Mr. Floore's limitations were caused, inter alia, by his right shoulder, legs, and thighs, it is not clear if these related to Mr. Floore's service-connected peripheral neuropathy of the upper and lower extremities. The possibility of such relation is reasonably raised by the record and is evidence

8

potentially favorable and material to Mr. Floore's claim, and the Board should have addressed this evidence in light of all of Mr. Floore's service-connected disabilities. *Id.*

We also note that Mr. Floore is service connected for diabetes with a 20% disability rating, yet, other than mentioning that his peripheral neuropathy is diabetes related, the Board did not discuss the effects of diabetes, if any, occupational or otherwise. Neither party included a medical examination report addressing diabetes in the ROP and it may be that there are no occupational effects from diabetes,[3] but an assessment of TDIU entitlement based on the combined effects of all service-connected disabilities should address all such disabilities to facilitate judicial review of that assessment. *See Allday v. Brown*, 7 Vet.App. 517, 527 (1995) (Board's statement "must be adequate to enable a claimant to understand the precise basis for the Board's decision, as well as to facilitate review in this Court"); *see also Hatlestad v. Brown*, 5 Vet.App. 524, 529 (1993) ("[T]he central inquiry in determining whether a veteran is entitled to TDIU is whether that veteran's service-connected disabilities alone are of sufficient severity to produce unemployability.").

Finally, it appears as though the Board was influenced in its decision by the fact that Mr. Floore terminated his employment as a result of non-service-connected disabilities. While the basis for Mr. Floore's terminating his employment in the trucking industry is supported by the record, it is not clear how this was weighed by the Board and to what extent it is even relevant to its determination that Mr. Floore's service-connected disabilities do not prevent him from undertaking any substantially gainful employment. 38 C.F.R. § 4.16(a) ("It is provided further that the existence or degree of non[-]service-connected disabilities or previous unemployability status will be disregarded where the percentages referred to in this paragraph for the service-connected disability or disabilities are met and in the judgment of the rating agency such service-connected disabilities render the veteran unemployable."); *see Pratt v. Derwinski,* 3 Vet.App. 269, 272 (1992) ("Even if, as it appears, the B[oard] determined that appellant's unemployability was a result of . . . non-service-connected [disability] its task was not finished. The B[oard] still was required to decide, without regard to the non-service-connected disabilities . . . , whether appellant's service-connected disabilities are sufficiently incapacitating as to render him unemployable."); *see also Hatlestad*,

---

[3] As noted *supra* note 2, the ROP is prepared by the parties and related to the issues they identify.

*supra*.

The Board's failure to address the above-noted issues frustrates judicial review. *See Allday*, *supra*. Accordingly, this matter will be remanded for further adjudication consistent with this opinion and with specific direction that the Board explain how the record evidence supports findings regarding the cumulative effects of all Mr. Floore's service-connected disabilities on his ability to obtain and maintain substantially gainful employment, or otherwise obtain the evidence necessary to do so. *Cf. James v. Brown*, 7 Vet.App. 495 (1995) (reversing Board decision based, in part, on VA social and industrial survey and letter from potential employer); *Gary*, *supra*. On remand, Mr. Floore may present any additional evidence and argument in support of the matter remanded, and the Board must consider any evidence and argument so presented. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002). This matter is to be provided expeditious treatment on remand. *See* 38 U.S.C. § 7112.

## IV. CONCLUSION

Upon consideration of the foregoing, the Board's May 25, 2012, decision is SET ASIDE and the matter REMANDED for further adjudication.

BARTLEY, *Judge*, concurring: While I agree that the Board decision contains reasons-or-bases deficiencies, I write separately to express the belief that as a practical matter where there are multiple compensable service-connected disabilities, especially affecting different body systems, expert opinion on the overall functional impairment, including occupational impairment, caused by the combination of service-connected disabilities *will be necessary for an adequately reasoned decision* as to TDIU entitlement. *See* 38 C.F.R. § 4.10 (2013) (medical examiner has the responsibility of furnishing a full description of the effects of disability upon the person's ordinary activity, including work).

VA endorsed this practice of providing a comprehensive examination in a training letter and in the *VA Adjudication Procedures Manual Rewrite* (M21-1MR) well before Mr. Floore's 2012 Board decision, and regardless whether those VA authorities are binding directives or mere guidance, *ante* at 5, I am persuaded that they should have been heeded in Mr. Floore's case and should be

adhered to in other TDIU cases, possibly removing the need for such appeals and hastening resolution of claims. *See* VA Training Letter 10-07 at 6-7 (Sept. 14, 1010) (a single "general medical examination . . . is to be scheduled" when a request for TDIU is expressly raised by the veteran or reasonably raised by the evidence of record and "the examiner should be requested to provide an opinion as to whether or not the Veteran's service-connected disability(ies) render him or her unable to secure and maintain substantially gainful employment, to include describing the disabilities' functional impairment and how that impairment impacts on physical and sedentary employment"); M21-1MR, pt. I, ch. 1.C.7.c. (Mar. 28, 2011) ("Requesting a Medical Examination or Opinion").

While my colleagues find that another VA issuance, VA Fast Letter 13-13, "read as a whole . . . leaves it to the rating activity to determine the need for a medical examination report or opinion," *ante* at 5-6, the letter expressly cites TDIU cases involving the impact of multiple service-connected disabilities as a prime example of a situation in which a comprehensive general examination and opinion as to employability will be necessary. VA Fast Letter 13-13 at 5 (June 17, 2013) ("Schedule a general medical examination only if the rating activity determines that it is needed to fairly and fully adjudicate the TDIU claim, *such as* original claims for disability compensation *or TDIU claims involving the impact of multiple service-connected and/or nonservice-connected disabilities upon employability*." (emphasis added)). To read the provision as allowing VA to decline to obtain an opinion in such cases negates the sound reasoning underlying VA's principle.

Mr. Floore has a combined 90% disability evaluation with seven compensable disabilities affecting four different body systems–endocrine, cardiovascular, musculoskeletal, and mental. Failing to hold VA to its considered judgment on this matter, that veterans such as Mr. Floore should receive a combined-effects opinion, shortchanges veterans and creates considerable delay and unfair denials in the adjudication of such claims. Veterans such as Mr. Floore generally have little ability to obtain an expert opinion on the combined effect of their disabilities and have no recourse but to appeal in order to receive an opinion or a grant of TDIU. They enter an appeal system already painfully overcrowded, lengthening the overall period it takes veterans to achieve a final decision. The failure to be absolutely diligent in assisting claimants is shortsighted behavior on VA's part. In order to resolve this complex case without years of administrative and judicial appeals, VA would have been better counseled to follow its own articulated practice and provide Mr. Floore with an

adequate expert opinion as to the combined effect of his varied and multiple disabilities on his overall ability to secure or follow a substantially gainful occupation.