Citation Nr: 1761212 
Decision Date: 12/29/17 Archive Date: 01/02/18

DOCKET NO. 10-45 047 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUE

Entitlement to a total disability rating based upon individual unemployability due to service-connected disabilities (TDIU).


REPRESENTATION

Veteran represented by: Robert Chisholm, Attorney 


WITNESSES AT HEARING ON APPEAL

The Veteran and his wife


ATTORNEY FOR THE BOARD

A. Price, Associate Counsel

INTRODUCTION

The Veteran served on active duty in the U.S. Army from February 1969 to November 1970.

This matter comes before the Board of Veterans' Appeals (Board) on appeal from a May 2015 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Roanoke, Virginia. 

During the November 2011 video hearing before the undersigned Veterans Law Judge concerning an increased rating for post traumatic stress disorder (PTSD), the Veteran testified that his PTSD rendered him unemployable. The Board consolidated the un-employability claim with the increased rating claim for PTSD, which was already on appeal, and remanded both issues in November 2013, for further development. The Board decided the PTSD rating claim in August 2016, but again remanded the TDIU issue for additional development. The TDIU claim has since been returned to the Board. 


FINDINGS OF FACT

1. The Veteran is service connected for PTSD and for coronary artery disease (CAD). 

2. The Veteran's PTSD has been evaluated as 50 percent disabling from September 2009 and 70 percent disabling from November 2011.

3. The Veteran's CAD has been evaluated as 60 percent disabling from December 2013. 

4. The evidence is in relative equipoise as to whether the Veteran is unemployable due to the effect of his service-connected disabilities. 



CONCLUSION OF LAW

Resolving all reasonable doubt in favor of the Veteran, the criteria for a TDIU are met. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.16 (2017).

REASONS AND BASES FOR FINDINGS AND CONCLUSION

Total disability ratings for compensation based on individual unemployability may be assigned when the combined schedular rating for the service-connected disabilities is less than 100 percent and when it is found that the service-connected disabilities are sufficient to produce unemployability without regard to advancing age, provided that, if there is only one such disability, this disability is ratable at 60 percent or more, or, if there are two or more disabilities, there is at least one disability ratable at 40 percent or more and additional disabilities to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16.

It is the established policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reasons of service-connected disabilities shall be rated totally disabled. Therefore, rating boards should submit to the Director, Compensation Service, for extra-schedular consideration all cases of veterans who are unemployable by reason of service-connected disabilities, but who fail to meet the percentage standards set forth in 38 C.F.R. § 4.16(a). The rating board will include a full statement as to the Veteran's service-connected disabilities, employment history, education and vocational attainment and all other factors having a bearing on the issue. 38 C.F.R. § 4.16(b). 

The Veteran's service-connected disabilities, alone, must be sufficiently severe to produce unemployability. Hatlestad v. Brown, 5 Vet. App. 524, 529 (1993). In determining whether unemployability exists, consideration may be given to the Veteran's level of education, special training, and previous work experience, but not to his/her age or to any impairment caused by non-service-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19.

The Veteran contends that due to his service-connected disabilities, he is unable to work. For the reasons below, the Board finds that the Veteran is entitled to a TDIU. 
 
The Veteran has two service-connected disabilities; PTSD rated at 70 percent from November 2011, and 50 percent effective from November 2009; and coronary artery disease (CAD) rated at 60 percent, effective from December 2013. His combined rating is 90 percent. As such, he meets the schedular requirements for the assignment of a TDIU. However, the main question before the Board is whether the Veteran's service-connected disabilities alone rendered him unable to obtain substantially gainful employment.

A review of the record shows that after separating from service, the Veteran worked in the coalmines for over 20 years, and following a shoulder injury retired in 2004, at the age of 55. 

During the November 2009 PTSD examination, the Veteran reported being out of work on social security disability due to a bad shoulder. He stated that while still employed he did his job adequately, got along with his co-workers, and in spite of conflicts with some supervisors, they were able to work through it. The examiner noted that the Veteran appeared to have no significant work-related difficulties regarding mental health and functioned adequately in the workplace until physical problems caused him to leave his position. 

The Veteran underwent a private psychiatric evaluation in February 2010, at which time the Veteran reported that he stopped working in 2003 because of a shoulder injury that left him disabled. At the same time, the evaluator indicated the Veteran was unable to handle much stress or any gainful employment. Moreover, he was not considered a good candidate for vocational rehabilitation. He had difficulty concentrating and with his memory, and was medicated for his emotional struggles. 

In a June 2011 Compensation and Pension Exam Report for PTSD, the examiner noted that the Veteran had been receiving Social Security Disability since 2004 for a shoulder injury, which caused him to leave his job as a coal miner; he had not worked since. He reported some problems with his short-term memory and considerable depression and anxiety that he tried to circumvent by staying busy. He also had increased angry outbursts, was more withdrawn and experienced problems sleeping due to distressing dreams. Overall, the examiner opined that the Veteran's symptoms caused increased problems in social functioning due to withdrawal, angry outbursts, and decreased interaction. 

During the November 2011 Board hearing, the Veteran testified that he did not believe he would be able to go back to work due to his many ailments, getting older and problems with his supervisors. He noted that working under a supervisor who was much younger rubbed him the wrong way. He said that he was barely able to do the work back then, and now that he is older, the work would be even more difficult. When prompted regarding why he stopped working, he noted that following surgery on his shoulder, he was unable to return to work because of an inability to handle the weight. His wife testified that he was very focused while he was employed but now that he was out of work, things had changed and his symptoms persisted.

The Veteran submitted a letter in support of his claim in March 2014. He indicated that he worked the evening shift while in the coalmines in order to avoid people and since leaving his job, his PTSD symptoms became more pronounced. 

A September 2014 VA PTSD examiner opined the Veteran had occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood. However, the examiner noted that his PTSD primarily impaired his family and social relationships and led to a low mood. His symptoms did not preclude his ability to obtain or maintain employment as evidenced by his ability to maintain a job for 20+ years until he was injured. 

A letter from a private psychiatrist was submitted in June 2015, in which she stated that the Veteran was unable to maintain a job because of his inability to tolerate even minimal stress, difficulty concentrating and problems with his memory. The doctor also noted she was not qualified to comment on the injury to his shoulder that other examiners concluded had rendered him unable to continue working in 2004. 

A July 2015 Disability Benefits Questionnaire summarized the Veteran's condition as productive of occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although general functioning satisfactorily, with normal routine behavior, self-care and conversation. It also included the observation the Veteran reported injuring his shoulder in a motorcycle accident in 2003 and being unable to return to work. The examiner noted that while his symptoms impaired his ability to function socially, his PTSD did not impair occupational activities. (It is not clear if this observation simply reflected the fact the Veteran was not then working, or was a judgment of his current capacities.) It was observed the Veteran worked in the coal mining industry for 27 years and although he encountered difficulties with supervisors, he maintained his job for that entire period until he was injured and unable to continue working. 

An examiner completed a Disability Benefits Questionnaire for heart conditions in November 2016 and noted that due to his CAD diagnosis, the Veteran would have to pace himself with physical activity. The accompanying opinion noted that the Veteran's heart condition manifested in 2013 and treatment notes from 2015 indicated he felt that PTSD was the main problem when dealing with others. Interview based testing indicated he was able to function at a METs level of 3-5. However, METs testing from 2013 indicated that he was able to function at 7 METs; which the examiner found to be more representative of his capabilities. This level is consistent with activities such as climbing stairs quickly, moderate bicycling, sawing wood, and jogging. Overall, the examiner found that it was less likely as not that his CAD was related to his inability to perform daily functions regarding occupational or employment activities. 

An examiner completed a Disability Benefits Questionnaire for PTSD in November 2016 and noted that it was difficult to assess whether the Veteran's mental health interfered with his daily work life because he had not worked for many years and was no longer in a regular work routine. The examiner referenced a traumatic incident that occurred while the Veteran was working in the mines in which the roof caved in on him; it was noted that he would have trouble working in confined environments in the future. He reported doing several chores at home due to his wife's inability, but she felt he was aggravated by housework. 

In September 2017, the Veteran submitted an affidavit and noted that he was never able to maintain relationships with his coworkers and he clashed with his supervisors because he had trouble getting along with authority figures. He felt that his symptoms worsened after he retired because he used working as a coping mechanism. 

A private rehabilitation counselor conducted an employability evaluation in October 2017 and submitted a report detailing the results; she concluded that the Veteran had been unable to secure and maintain gainful employment since 2004 when he retired solely due to his PTSD. The counselor went through a review of his background and medical record, making conclusions regarding his current symptoms and their impact on his daily life. 

The ultimate question of whether a Veteran is capable of substantial gainful employment is not a medical one; rather, that determination is for the adjudicator. 38 C.F.R. § 4.16(a); Geib v. Shinseki, 733 F.3d 1350 (2013). However, medical examiners are responsible for providing a full description of the effects of disability upon the person's ordinary activity. 38 C.F.R. § 4.10; Floor v. Shinseki, 26 Vet. App. 376, 381 (2013). 

Based on the evidence of record, the Board finds that it is at least as likely as not the Veteran is unemployable due to his service-connected disabilities. As noted above, he meets the schedular requirements, he has been unemployed throughout the pendency of this appeal, and while his shoulder injury was the immediate reason for his retirement, his PTSD and CAD symptoms have since been shown as well to be severe enough to preclude employment. 

Notably, opinions from two private psychiatrists in February 2010 and June 2015, and a rehabilitation counselor in October 2017, support the Veteran. The February 2010 psychiatrist noted that he was unable to handle stress and any employment because he had difficulty concentrating and with his memory, and was medicated for his emotional struggles. The June 2015 psychiatrist noted that his symptoms were severe and prevented him from working; he was unable to tolerate even minimal stress, had difficulty concentrating and problems with his memory. Both of these opinions noted an increase in his symptoms that could have an impact on his ability to work. 

The counselor opined that PTSD was the sole reason for the Veteran's retirement in 2004 and continued inability to work; however, that contradicts the Veteran's own statements that he retired following surgery on his shoulder. Moreover, the counselor gives only scant mention of the shoulder injury. Therefore, the counselor's opinion is not accorded great weight, but nevertheless is taken to mean the Veteran's PTSD has a significant impact on the Veteran's ability to work. 

Most of the VA examiners found that the Veteran retired in 2004 solely due to his right shoulder and that his PTSD symptoms caused limitations in a social context and had no impact on his occupational abilities. However, as noted above, the private opinions indicated that his PTSD caused certain limitations that would prevent him from maintaining employment, and it is unclear if those VA providers were meaningfully addressing any difference in the presentation of PTSD symptoms prior to, and since the Veteran stopped working. . 

Overall, the Board considers the evidence on the question at issue to be in equipoise. Giving the benefit of the doubt to the Veteran, entitlement to TDIU is warranted. 







 (CONTINUED ON NEXT PAGE)


ORDER

A TDIU is granted. 



____________________________________________
MICHAEL E. KILCOYNE
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs