﻿Citation Nr: AXXXXXXXX
Decision Date: 12/31/20 Archive Date: 12/31/20

DOCKET NO. 200212-62305
DATE: December 31, 2020

ORDER

Entitlement to a total disability rating for compensation based on individual unemployability due to service-connected disabilities (TDIU) is denied.

FINDING OF FACT

The Veteran is not precluded from securing or following a substantially gainful occupation due to her service-connected disabilities.

CONCLUSION OF LAW

The criteria for entitlement to a TDIU rating have not been met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 3.102, 3.340, 3.341, 4.16.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from April 1977 to November 1977 with additional service in the National Guard thereafter.

This matter is before the Board on appeal of a January 2020 rating decision, having previously been deferred for further development in an April 2019 rating decision.

On August 23, 2017, the President signed into law the Veterans Appeals Improvement and Modernization Act, also known as the Appeals Modernization Act (AMA). Pub. L. No. 115055 (to be codified ast amended in scattered sections of 38 U.S.C.), 131 Stat. 1105 (2017). This law creates a new framework for veterans to seek review of their claims. In February 2020, the Veteran submitted a VA Form 10182 Notice of Disagreement which selected the Direct Review docket, indicating that the Veteran does not wish to have a Board hearing and which considers only the evidence of record at the time of the rating decision on appeal. As such, although the Veteran did submit additional evidence thereafter, the Board may only consider the evidence available to the Agency of Original Jurisdiction (AOJ) when the rating decision on appeal was issued, January 15, 2020.

The Veteran has alleged that chronic back pain limits her mobility, her ability to bend and lift, and her ability to sit, stand, or walk for prolonged periods. The Veteran has also reported that incontinence requires frequent bathroom breaks and causes her to have several accidents per day.

Total disability will be considered to exist where there is present any impairment of mind and body that is sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38C.F.R. §3.340. Total disability ratings for compensation may be assigned, where the schedular rating is less than total and when the disabled person is unable to secure or follow a substantially gainful occupation because of service-connected disabilities, provided that the Veteran meets the schedular requirements.

Specifically, if there is only one such disability, the disability shall be ratable at 60 percent or more; if there are two or more disabilities, there shall be at least one disability that is ratable at 40 percent or more and enough additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. §§ 3.340, 3.341, 4.16(a).

The question of unemployability or the veteran's ability or inability to engage in substantial gainful activity must be examined in a practical manner. The crux of the matter rests upon whether a particular job is realistically within the capabilities, both physical and mental, of the appellant.

Marginal employment shall not be considered substantially gainful employment and generally shall be deemed to exist when a veteran's earned income does not exceed the amount established by the U.S. Department of Commerce, Bureau of the Census, as the poverty threshold for one person. Marginal employment may also be held to exist, on a facts-found basis (includes but is not limited to employment in a protected environment such as a family business or sheltered workshop), when earned annual income exceeds the poverty threshold.

The Board shall consider the nature of the employment and the reason for any termination. 38 C.F.R. § 4.16(a). The central inquiry is "whether the veteran's service-connected disabilities alone are of sufficient severity to produce unemployability." Neither nonservice-connected disabilities nor advancing age may be considered in the determination. 38 C.F.R. §§ 3.341, 4.19.

The record must reflect some factor that takes the case outside the norm with respect to a similar level of disability under the rating schedule. 38 C.F.R. §§ 4.1, 4.15. The fact that a claimant is unemployed or has difficulty obtaining employment is not enough. The question is whether the Veteran can perform the physical and mental acts required by employment, not whether she can find employment.

"Substantially gainful employment" is that employment "which is ordinarily followed by the nondisabled to earn their livelihood with earnings common to the particular occupation in the community where the veteran resides." Moore v. Derwinski,1 Vet. App. 356, 358 (1991). "Marginal employment shall not be considered substantially gainful employment." 38C.F.R. §4.16.

In determining whether a veteran can secure and follow a substantially gainful occupation, the United States Court of Appeals for Veterans Claims (Court) in Ray v. Wilkie directed the Board to consider the following factors: (1) the veteran's history, education, skill, and training; (2) whether the veteran has the physical ability (both exertional and non-exertional) to perform the type of activities required by the occupation at issue; and (3) whether the veteran has the mental ability to perform the activities required by the occupation at issue. 31 Vet. App. 58, 73 (2019).

In determining whether unemployability exists, consideration may be given to the Veteran's level of education, special training, and previous work experience, but not to her age or to any impairment caused by nonservice-connected disabilities. 38 C.F.R. §§ 3.341, 4.16, 4.19.

The responsibility for making the ultimate TDIU determination is placed on the adjudicator and not a medical examiner. See Geib v. Shinseki, 733 F.3d 1350, 1354 (Fed. Cir. 2013). A medical examiner's role is limited to describing the effects of disability upon the person's ordinary activity. See Floore v. Shinseki, 26 Vet. App. 376, 381 (2013).

The Board notes that, while multiple sources in the evidence of record reference the Veteran’s ability or inability to perform sedentary work, the term sedentary is not defined by VA regulations for TDIU. Rather, the meaning is to be determined on a case-by-case asis, including how the concept of sedentary work figures into the Veteran’s overall disability picture and vocational history. See Withers v. Wilkie, 30 Vet. App. 139 (2018). In this instance, the Board finds that a majority of the pertinent evidence has a shared understanding of what generally comprises sedentary work, which will be discussed further below. While some interpretations may vary, for purposes of this decision, sedentary work consists of work that requires exerting up to ten pounds of force no more than occasionally (one-third of the time) and or a negligible amount of force more often, to lift, carry, push, or pull. Furthermore, sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required no more than occasionally and the exertional limitations above are not exceeded.

The Board has carefully reviewed the evidence of record and finds that the preponderance of the evidence is against a finding that the Veteran is precluded from securing and following substantially gainful employment. The reasons follow.

The Veteran’s service-connected disabilities have met the schedular requirements for TDIU consideration since January 29, 2013. At that time, the Veteran had a 40 percent rating for radiculopathy of the right lower extremity, sciatic nerve associated with osteoarthritis and degenerative spondylosis of the lumbar spine with intervertebral disc syndrome (IVDS); a 20 percent rating for osteoarthritis and degenerative spondylosis of the lumbar spine with IVDS; a 20 percent rating for radiculopathy of the left lower extremity, sciatic nerve associated with osteoarthritis and degenerative spondylosis of the lumbar spine with IVDS; and a 20 percent rating for urinary incontinence associated with osteoarthritis and degenerative spondylosis of the lumbar spine with IVDS, for a combined rating of 70 percent. The Veteran currently has a 90 percent total disability rating from November 5, 2019, when the Veteran’s urinary incontinence was raised to a 60 percent rating and the Veteran was awarded a 10 percent rating for radiculopathy of the left lower extremity, femoral nerve associated with osteoarthritis and degenerative spondylosis of the lumbar spine with IVDS. 

As stated, the Veteran’s service-connected disabilities related to osteoarthritis and degenerative spondylosis of the spine with associated radiculopathy and IVDS, as well as urinary incontinence. The issue of unemployability was first raised in December 2013 when a private physician submitted a letter indicating that the Veteran was presently unemployable due to chronic low back pain. However, this statement did not include a rationale and was not accompanied by an objective medical findings or an assessment of the Veteran’s functional abilities and limitations. Opinions without a rationale are not probative and, thus, this statement is unpersuasive. Prior to December 2013, an April 2013 VA examination indicated that the Veteran’s back condition impacted the Veteran’s ability to work by limiting her ability for prolonged sitting, standing, walking, bending, and lifting, but did not suggest unemployability. An April 2013 VA exam also indicated that the Veteran’s incontinence required use of absorbent materials that require changing less than twice a day and did not impact the Veteran’s ability to work.

Thereafter, the medical record indicates generally routine and conservative treatment without inpatient care or significant exacerbations of symptoms. In 2014, the Veteran participated in therapeutic exercise with weight training and was noted to be exercising more than she ever had while progressing her goal of increasing her physical conditioning as tolerated. Treatment notes during this period indicate the Veteran to experience incontinence, but do not reflect frequent complaints or indicate interference with the Veteran’s activities of daily living. In August 2015 and August 2016, the Veteran denied experiencing bladder or bowel symptoms.

In October 2016, the Veteran attended an outpatient physical therapy consultation. She reported that she lives at home with an adopted 9-year old son with special needs and that a nephew comes over to help with household chores once or twice per week because she has difficulty bending to pick things up. She reported that she is very active in her church. She reported that she uses Tylenol once per day to manage her pain. The following month she indicated that she has to frequently sit when ambulating in the community. She reported that she was going to start a water aerobics program the next week, but later stated that it did not fit with her schedule. The Veteran had her medication prescription changed from Tylenol to ibuprofen in 2017, but she switched back to Tylenol the following year because it provided her better relief for her back pain. In May 2017, the Veteran denied experiencing any bladder/bowel symptoms. 

The Veteran received a medical review from a private physician in July 2018. The physician opined that the Veteran has been unable to secure and follow substantially gainful employment since 2013, due entirely to her thoracolumbar condition and chronic pain. The physician seems to have based the 2013 date of unemployability on the December 2013 doctor’s statement that the Veteran was unemployable, which, as discussed above, did not provide any rationale for its conclusion. The physician went on to state that the Veteran would have been unable to perform even sedentary work as of 2013 because it requires the ability to sit for six hours in a normal workday and it is well known among orthopedic surgeons that individuals with significant thoracolumbar symptoms simply do not tolerate prolonged sitting. This conclusion is based on a generalization of all individuals who experience these symptoms and does not relate to the Veteran’s specific functioning. Furthermore, this opinion ignores the possibility of sedentary occupations that allow the Veteran to switch positions so as to avoid prolonged sitting. Additionally, the physician’s summation of the Veteran’s symptoms is not fully consistent with evidence of record. The physician did not assess the Veteran prior to 2018 and only cited to findings from 2013 that indicate moderate radiculopathy and some decreased sensation. The physician did not acknowledge the interim evidence that suggests the Veteran has a higher degree of overall functioning, such as the Veteran being the caretaker for a special needs child, being active in her church, maintaining an exercise routine at times, taking college classes online, or that the Veteran’s pain has generally been managed conservatively with the use of Tylenol. As such, the Board finds this opinion to be of limited probative value due to insufficient bases.

On examination in March 2019, the Veteran was found to have mild tenderness over the lower back and her range of motion was described as okay. Straight leg raise testing was negative and the Veteran denied bladder/bowel symptoms. In mid-2019, the Veteran reported that she has difficulty bending, has limited mobility, and cannot stand longer than 10 minutes. 

The Veteran underwent a VA examination for the spine and peripheral nerve conditions in July 2019. The Veteran continued to report pain in her back and extremities and the examiner documented the Veteran exhibited radiculopathy and some guarding/muscle spasms. The examiner wrote the Veteran had a normal gait despite reporting the regular use of a cane. The Veteran’s pain was noted to result in some functional loss, and examination findings were consistent with the Veteran’s reports of pain, weakness, fatigability, and incoordination significantly limiting the Veteran’s functional ability with repeated use over time and during flare-ups. The examiner found the Veteran’s back impairment impacts her ability to work, stating that she cannot bend, lift more than 10 pounds, stand more than 30 minutes, or walk more than one-half mile. On assessment of the Veteran’s radiculopathy, the Veteran was noted to experience incomplete paralysis with chronic pain and some reduced sensation. The examiner indicated that the Veteran’s peripheral nerve condition does not impact the Veteran’s ability to work. 

The Veteran also underwent a VA examination for her urinary incontinence in August 2019. The Veteran reported that she only started noticing urinary incontinence approximately 18 months prior. The Veteran reported daytime voiding intervals between 2 and 3 hours and nighttime awakening to void 5 or more times. The Veteran reported that she often does not make it to the bathroom in time and experiences urinary leakage. The examiner found that the Veteran’s condition does not impact her ability to work and that it is at least as likely as not that she is able to perform sedentary work. 

In a November 2019 letter, the Veteran’s representative indicated that the July and August 2019 VA examinations contained inadequate reasons and bases for denial of TDIU. As a result, new examinations were scheduled and conducted in December 2019.

On examination of the Veteran’s back disability and after reviewing the evidence of record, the December 2019 examiner diagnosed the Veteran with facet arthritis and degenerative joint disease of the lumbar spine, based on a 2016 lumbar x-ray, due to overuse of the Veteran’s back caused by the service-connected thoracic lumbar conditions. The objective findings were similar to those documented within the July 2019 examination report with bilateral radiculopathy, some reduced strength and range of motion, as well as reduced functioning on flare-up and with repeated use due to pain, fatigue, weakness, and lack of endurance. However, the Veteran did not exhibit muscle spasm or guarding and did not report the use of an assistive device. The examiner indicated that the Veteran has difficulty bending at the waist, and difficulty doing household chores, such as washing dishes, mopping, and making the bed due to prolonged standing, but opined that the Veteran would still be capable of performing sedentary work as defined herein. This opinion is probative, as it is based on a review of the evidence and an examination of the Veteran from a qualified medical professional. It includes an explanation of the limitations the Veteran has and the physical activity that she can perform. 

Also during the December 2019 examination, the Veteran reported daytime voiding intervals between 1 and 2 hours and nighttime awakening to void 5 times or more with the use of absorbent material which must be changed more than 4 times per day. Although the examiner acknowledged that the Veteran’s urinary incontinence had worsened, he found that the Veteran could still perform sedentary work. He included a rationale indicating that the Veteran must void approximately every 2 hours during the day and that sedentary work should be sufficient so long as a restroom is easily available. The examiner described sedentary work consistent with its definition used herein. This opinion is probative as it is was based on an examination and review of the evidence of record from a qualified medical professional. The opinion accounts for the reports of the Veteran’s symptoms and explains the work environment that would be suitable for the Veteran. These findings are not inconsistent with the majority of the Veteran’s treatment records, indicating that the Veteran has generally denied bladder/bowel problems and does not have a consistent history of reporting issues with urinary incontinence. 

The record indicates that the Veteran has been working on a vocational rehabilitation plan through the VA since 2019 and that she has been completing online college coursework. A November 2019 document relating to the rehabilitation plan indicates that the Veteran seeks to obtain and maintain employment in the occupational goal of social worker, community and family service worker, juvenile justice worker, or a closely-related field by completing a master’s degree in public administration. A vocational counseling report in June 2019 stated that the Veteran has been very cooperative throughout the process and appears to be dedicated to completing this training which will translate into suitable employment. The Veteran received a professional certificate in Health and Wellness Administration Foundations from the University of Phoenix in May 2015. In an October 2019 vocational exploration form, the Veteran listed three different potential occupations for herself, contingent on earning a master’s degree from the University of Phoenix online, including Director of Religious Activities and Education, Post-Secondary Administrator, and School Career Counselor. She described all of these positions as light-duty. When asked to list both her service-connected and nonservice-connected disabilities and whether or not these occupations would aggravate those disabilities, the Veteran listed osteoarthritis and degenerative spondylosis of the lumbar spine with IVDS. She stated that these occupations would not aggravate her disabilities. The Veteran did not mention urinary incontinence as a disability or a potential barrier to employment.

The Board acknowledges that aspects of the Veteran’s vocational rehabilitation planning relate primarily to non-physical components of the Veteran’s overall functioning and that the potential occupations listed are not immediately available to the Veteran if they require a master’s degree, which she has not yet obtained. However, the Veteran’s vocational exploration and planning suggests that the Veteran believes she is physically capable of performing sedentary work and that she does not believe that urinary incontinence precludes her from employment, despite her representative’s contention that the Veteran’s urinary incontinence precludes sedentary work. Otherwise, the Veteran’s efforts of obtaining an advanced degree would not lead to her stated occupational goals. Although the Veteran reported excessive and worsening urinary incontinence on VA examinations in 2019, these statements are undermined by the Veteran’s treatment records, during which she routinely denied experiencing any bladder/bowel problems, including as recently as March 2019. The most recent VA examiner also found that the Veteran would still be capable of performing sedentary work in light of her urinary incontinence. It appears that the Veteran’s symptoms can be accommodated by easy access to a restroom. The Veteran’s vocational planning also suggests that her spine condition and radiculopathy do not restrict her from sedentary work or otherwise substantially gainful employment by her own admission. This is supported by the findings of the December 2019 VA examiner, as well as indications of the Veteran’s activity levels throughout the record, including periods of exercise, caring for a special needs child, staying active in her church, and completing online coursework. The Board acknowledges that the Veteran experiences chronic pain and is unable to sustain prolonged sitting, standing, or walking. However, the record supports a finding that the Veteran would be capable of sedentary work that allows the Veteran to change positions at will in order to maximize her comfort. The weight of the evidence suggests that the Veteran is physically capable of performing substantially gainful employment.

Regarding the Veteran’s education, training, skills, and work history, the Form 21-8940 submitted by the Veteran did not list any employment in the last 5 years that she had worked and also did not list any education that she has received, despite listing 2 years of college. The Board believes this was likely the result of a misunderstanding, as the Veteran has separately reported a 38-year history as a nurse through multiple employers, and she continues to pursue educational opportunities through the University of Phoenix online, as discussed above. The record also indicates that the Veteran earned a professional certificate in Health and Wellness Administration Foundations from the University of Phoenix in May 2015. The Veteran’s college experience and impressive work history, as well as her continued efforts at self-improvement through higher education, indicate that the Veteran has the capacity for learning, training, and working effectively with others that are not hindered by her service-connected disabilities and which would allow for transition to a different type of employment. The Board notes that, despite the representative’s contention to the contrary, the Veteran’s age may not be evaluated in consideration of a claim for TDIU. 38 C.F.R. §§ 3.341, 4.16, 4.19.

As to the Veteran’s mental ability to perform substantially gainful employment, the Veteran has reported a long history of depression that predates her military service, and she is not service connected for any mental disorder. In November 2019, the Veteran’s representative stated that VA evaluators did not give consideration to non-exertional limitations due to chronic pain and depression, such as memory and concentration deficits, and the ability to relate with others. As stated, the Veteran is not service connected for depression and TDIU analysis may consider only limitations associated with service-connected disabilities. Furthermore, the preponderance of the evidence of record is against a finding that the Veteran has significant mental limitations associated with her service-connected disabilities. She has reported that she only takes Tylenol to manage her pain on a regular basis. The Veteran has generally been found to be fully alert and oriented, pleasant, and cooperative with good judgment and good problem-solving skills. Treatment notes describe her as a “self-starter,” socially interactive, and able to follow directions. Additionally, the Veteran has demonstrated the ability to successfully complete college coursework, which demonstrates a high level of cognitive functioning and she continues to pursue an advanced degree to improve her vocational prospects. The weight of the evidence does not show that the Veteran has mental limitations that would preclude her from performing substantially gainful employment. 

Based on the above assessment of the Veteran’s physical and mental abilities with consideration of her education, training, skills, and work history, the Board finds that the Veteran is capable of full-time work that would result in income at the level of substantially gainful employment. For example, there are jobs that can be performed from home, such as a telemarketer, where the employee makes calls and reads a script, which does not require extensive training or experience, and would allow the Veteran to switch positions at will in order to maximize her comfort and would have easy access to the restroom. Additionally, the Veteran had documented that she felt she could be school career counselor, which means she could also be a school nurse, which involves a subject matter that she knows well, and she has the current education to perform such occupation. She could also work as a case manager, which involves coordinating care for patients, often for large insurance companies. The Veteran could also be a legal nurse consultant, where she could provide lawyers, paralegals, and others working in the legal profession with expertise related to medical issues related to law, such as personal injury, malpractice, and workers compensation. The Veteran could also be a health care recruiter, where she could help fill vacancies related to the healthcare industry. These kinds of jobs would allow the Veteran to take breaks as needed. This is evidence against a finding that the Veteran is precluded from all forms of substantially gainful employment.

For all the reasons described above, the Board finds that the Veteran is not precluded from all forms of substantially gainful employment and, therefore, is not entitled to a TDIU rating. The Board has considered the applicability of the benefit-of-the-doubt doctrine. However, it is not applicable where, as here, there is not an approximate balance of positive and negative evidence. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. Accordingly, entitlement to a TDIU rating is not warranted. 

 

A. P. SIMPSON

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board G. Wonderling, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.