Carl WASHINGTON, Appellant,

v.

Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.

No. 90–142.

United States Court of Veterans Appeals.

Argued July 16, 1991.

Decided Sept. 16, 1991.

Before KRAMER, FARLEY and MANKIN, Associate Judges.

FARLEY, Associate Judge:

On appeal to this Court is a November 1, 1989, Board of Veterans' Appeals' (Board or BVA) decision which affirmed the Regional Office determination that the veteran's service-connected disabilities were not severe enough to warrant a disability rating higher than 30 percent or an award of unemployability benefits. Although the Board increased the veteran's rating for his service-connected disability from 10 percent to 30 percent, the Board failed to assess properly the veteran's condition in a manner consistent with the rating schedule. In addition, the Board failed to provide "reasons or bases" pursuant to 38 U.S.C. § 7104(d)(1) (formerly § 4004(d)(1)) for the conclusion that appellant is employable. For these reasons, this Court vacates the Board's decision and remands the matter for further consideration consistent with this opinion.

I.

Appellant, Carl Washington, served in the United States Navy from August 1974 to September 1975. In March 1975, appellant struck his head on an upper sleeping berth. Although he was not rendered unconscious immediately, appellant reported that he did lose consciousness shortly thereafter for an unknown period of time. R. at 1. Approximately six months later appellant claimed to have had a second trauma to his head, when in an attempt to break up a fight, he was hit over the head with a pool cue and was rendered unconscious. SR. at 2–3. After the first injury, appellant began to suffer from headaches. SR. at 2.

Following his honorable discharge from the Navy, appellant applied for service connection for headaches. In response to the receipt of a claim, the then Veterans' Administration, now the Department of Veterans Affairs (VA), scheduled an examination by a VA neuropsychiatrist who conducted psychoneurological examinations in April 1976 and November 1976. In each exami-

Stephanie Forester, with whom Mark A. Venuti and Barton F. Stichman, Washington, D.C., were on the brief, for appellant.

John D. Lindsay, Jr., with whom Raoul L. Carroll, Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, and Pamela L. Wood, Deputy Asst. Gen. Counsel, Washington, D.C., were on the brief, for appellee.

nation, appellant's description of the two types of headaches was recorded by the neuropsychiatrist. The first type of headache was characterized by appellant as "pain over the left frontal region of his head, then ... pain over both occipital regions of his head, and then the pain will travel all over his head. The above type headaches will last about 8 hours ... and is [sic] worse when he is under tension." *Id.* The second type of headache was described as a "pounding or throbbing-like feeling all over his head. This type of headache is present constantly everyday, and is worse when he is under tension." R. at 2. The VA neuropsychiatrist's diagnosis was: "1. PSYCHOPHYSIOLOGIC MUSCULO-SKELETAL DISORDER MANIFESTED BY TENSION HEADACHES. 2. HEAD INJURY NOT FOUND AT THIS TIME." SR. at 3.

Beginning on September 3, 1975, appellant received service connection for psychophysiological musculoskeletal disorder manifested by headaches at a rating of 10 percent, R. at 35; *see also* 38 C.F.R. § 4.132, Diagnostic Code 9505 (1990), and for a disfiguring scar on his right forehead at 0 percent. R. at 48; *see also* 38 C.F.R. § 4.118, Diagnostic Code 7800 (1990). Appellant appealed the rating decision to the Board which affirmed it. R. at 3–5. In November 1983, the rating for the scar on his forehead was raised to 10 percent retroactive to March 1981.

In June 1987, appellant requested an increased rating for each of his service-connected disabilities and 100–percent disability for unemployability. Along with his request for an increased rating, appellant submitted a copy of the Social Security Administration (SSA) Administrative Law Judge's (A.L.J.) decision of March 27, 1987, awarding appellant disability insurance benefits based on unemployability retroactive to January 1, 1982. R. at 23–26. Determining that: "The medical evidence establishes that the claimant has severe somatoform and personality disorders with flat affect and schizoid tendencies, low back pain and headaches," R. at 26, the A.L.J. found that: "The severity of the claimant's impairments ... has precluded

him from working for at least 12 continuous months...." *Id.*

Appellant received a Compensation and Pension (C & P) examination on September 2, 1987. The examining VA psychiatrist also was appellant's treating physician. The psychiatrist found social adjustment to be "minimal" and industrial adjustment to be "Moderate to Nil." R. at 29.

In addition to the psychiatric examination, appellant was tested by a neuropsychologist who stated that:

> He presents himself as physically ill with many chronic complaints and vague pain with fatigability and irritability. He appears depressed, generally anxious, and very concerned about his somatic symptoms.... His social relationships appear superficial and shallow and he shows poor social judgment. His thinking tends to be eccentric and he appears to relate poorly, resorting to withdrawal and need-fulfillment fantasy to escape from reality pressures.... He appears to relate to others very poorly and to be reserved and uncomfortable in social situations. He is presently depressed and anxious.... He is relatively insightless. This, combined with his rigidity of thinking, give him a poor prognosis for outpatient psychiatric or psychological treatment.

R. at 31–32. The impression was that appellant was "experiencing a psychophysiological reaction." R. at 32. In addition to these two examinations, a social worker also met with appellant to obtain a social history.

On October 30, 1987, the Regional Office (RO) "confirmed and continued" appellant's ratings. R. at 35. The RO also denied appellant's application for individual unemployability. R. at 36. Following the rating decision of October 30, 1987, the veteran submitted additional evidence consisting of a VA statement of treatment dated November 8, 1988, signed by the treating VA psychiatrist, and an evaluation for lower back pain. The treating VA psychiatrist certified that appellant was being treated in the VA Mental Health Clinic "for his

Psychophysiological condition manifested by Musculo-skeletal disorder and tension headaches" and stated that "*[a]ny* stress will trigger muscle pain and tension headaches." R. at 37 (emphasis added). The VA physician who conducted the evaluation for back pain stated in his report that "[d]iffuse tenderness at the lower back, slight muscle spasms noted.... Assessment: Chronic LBP [Lower Back Pain]." R. at 38. When no action was taken on this new evidence, on November 25, 1988, appellant filed a Notice of Disagreement. R. at 39–46.

During a hearing conducted by a hearing officer on January 20, 1989, appellant stated that the last employment he held was with the United States Post Office as a mail handler from October 1982 to May 1985. R. at 53. Among the reasons that appellant gave during the hearing for leaving the postal service was his "health." *Id.* Appellant testified that during the time period in which he was employed by the post office about half of that time he called in sick due to muscle tension and stress. R. at 54. The veteran informed the hearing officer that he currently was going to school for real estate brokers/agents courses. The veteran stated that he believed that self-employment as a real estate investor would be the best form of employment for him because he cannot tolerate tension or stress, R. at 64, reasoning that: "I'm doing it as education for my eventually becoming a real estate investor, there's no stress or strain in that. Being a real estate investor will make it easier for me to [have] ... an income other than have to physically have to go out to get it." R. at 70.

The hearing officer affirmed the 10–percent rating assigned for the psychological musculoskeletal disorder and the 10–percent rating assigned for the disfiguring scar on the veteran's forehead and affirmed the denial of unemployability benefits "because the veteran's service-connected disabilities do not solely preclude the veteran from engaging in substantially gainful employment...." R. at 76. Appellant then appealed the issue of an increased rating for his psychophysiological

musculoskeletal disorder and the issue of unemployability to the Board. Appellant did not appeal the 10–percent rating for the disfiguring scar.

Noting that in the two years from the time of the original rating decision and the rendering of the Board's decision there had been a change in rating criteria (appellant refused the option to begin the adjudication process again), the Board, applying the old criteria, granted the veteran an increase to 30 percent for his psychophysiological musculoskeletal disorder. The Board found as fact that "[t]he veteran's primary disability is psychophysiological musculoskeletal disorder which is manifested by social isolation, difficulty with interpersonal relationships, headaches and tenderness in his low back." *Carl Washington*, BVA 89–03089, at 6 (Nov. 1, 1989). In the discussion and evaluation section of the opinion, the Board stated: "Although the veteran has a significant psychiatric disorder, his service-connected disabilities alone do not preclude him from employment in a relatively low stress job which does not involve heavy manual labor." *Id.* at 6. The Board concluded that the denial of unemployability benefits must be affirmed. Appellant perfected a timely appeal to this Court. This Court's jurisdiction is based upon 38 U.S.C. § 7252 (formerly § 4052).

II.

A.

In his brief to this Court, appellant asks the Court to find that the Board was clearly erroneous and to set aside its determination that his service-connected condition warrants only a 30–percent rating. In addition, appellant argued that the Board's statements are legally inadequate pursuant to 38 U.S.C. § 7104(d)(1) and *Gilbert v. Derwinski*, 1 Vet.App. 49 (1990) because there are no "reasons or bases" provided to support the Board's decision. In response, the Secretary urges the Court to affirm the Board's decision as it is consistent with the evidence of record.

 In rating the veteran's psychophysiologic musculoskeletal disorder, 38 C.F.R. § 4.132, Diagnostic Code 9505, the Board applied the rating criteria that initially was used to rate the veteran's disorder even though new criterion had been adopted; however, this Court will apply the law or regulation in effect at the time of the Court's decision "unless to do so would work manifest injustice or there is statutory direction or legislative history to the contrary." *Karnas v. Derwinski*, 1 Vet. App. 308, 312 (1991) (citing *Bradley v. School Bd.*, 416 U.S. 696, 711, 94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974)). The rating criteria for 38 C.F.R. § 4.132, Psychoneurotic Disorders, and Diagnostic Code 9509 now in effect provides:

Definite impairment in the ability to establish or maintain effective and wholesome relationships with people. The psychoneurotic symptoms result in such reduction in initiative, flexibility, efficiency and reliability levels as to produce definite industrial impairment ............ 30%

Ability to establish or maintain effective or favorable relationships with people is considerably impaired. By reason of psychoneurotic symptoms the reliability, flexibility and efficiency levels are so reduced as to result in considerable industrial impairment ..................... 50%

Ability to establish and maintain effecttve [sic] or favorable relationships with people is severely impaired. The psychoneurotic symptoms are of such severity and persistence that there is severe impairment in the ability to obtain or retain employment ............... 70%

The attitudes of all contacts except the most intimate are so adversely affected as to result in virtual isolation in the community. Totally incapacitating psychoneurotic, symptoms bordering on gross repudiation of reality with disturbed thought or behavioral processes associated with almost all daily activities such as fantasy, confusion, panic and explosions of aggressive energy resulting in profound retreat from mature behavior. Demonstrably unable to obtain or retain employment................... 100%

The Board in the discussion and evaluation section of its decision stated:

We note that the veteran is *socially isolated* and has had difficulty *maintaining employment*. In addition, he has some underlying depression. In our opinion, particularly with the resolution of reasonable doubt in the veteran's favor we are of the opinion that the evidence shows that the veteran has both social and industrial impairment. Accordingly, a 30 percent evaluation is warranted.

*Washington*, BVA 89–03089, at 5 (emphasis added). Although the Board awarded appellant a 30–percent rating, the language used to describe the disability from which appellant suffers is not consistent with the criteria for a 30–percent rating. The Board found that appellant has difficulty maintaining employment; however, the elements of "obtaining and retaining employment" does not appear in the 30–percent rating criteria. Rather, "obtaining and retaining employment" first appears as an element in the 70–percent and then in the 100–percent rating criteria. Also, the Board discusses the veteran's "isolation;" however, "isolation" appears only as an element of a 100–percent rating criteria. Nowhere does the Board use the term "definite" when discussing the veteran's disability; yet "definite" impairment is an integral element of a disability rated at 30 percent.

Rating criteria such as "definite" and "isolation" are discrete and noninterchangeable elements of the rating criteria adopted by the Secretary to rate disabilities according to severity. In the decision now before the Court, the Board failed to apply properly the criteria set out in the rating schedule. Such a hodgepodge use of rating elements tends to destroy the rating structure and renders it meaningless. Because of this noninterchangeable nature of the rating elements, the Board, in the decision now before this Court, failed to use the elements of the rating criteria in a manner that would facilitate review by this Court and understanding by the veteran. *Gilbert*, 1 Vet.App. at 56–57.

### B.

 In addition to its failure to rate the veteran properly under the rating criteria in a manner that would facilitate review, the Board failed to articulate how the diag-

noses of the VA psychiatrist relates to the elements and terminology of the rating schedule resulting in the determination that the veteran's disability is ratable only at 30 percent. In light of the strong language used by the VA psychiatrist, the Board failed to provided any "reasons or bases" for its conclusion that the veteran's service-connected condition is only ratable at 30 percent.

The VA psychiatrist who is also the veteran's treating physician, stated in the C & P examination that the veteran's social adjustment is "minimal" and his industrial adjustment "Moderate to Nil." R. at 29. Recognizing that each examiner may use terminology that does not perfectly fit into the rating criteria promulgated by the VA, 38 C.F.R. § 4.130 (1990) provides:

The severity of disability is based upon actual symptomatology, as it affects social and industrial adaptability.... The objective findings and the examiner's analysis of the symptomatology are the essentials. The examiner's classification of the disease as "mild," "moderate," or "severe" is not determinative of the degree of disability, but the report and the analysis of the symptomatology and the full consideration of the whole history by the rating agency will be.

In addition, 38 C.F.R. § 4.2 (1990) provides:
It is the responsibility of the rating specialist to interpret reports of examination in the light of the whole recorded history, reconciling the various reports into a consistent picture so that the current rating may accurately reflect the elements of disability presented.... If a diagnosis is not supported by the findings on the examination report or if the report does not contain sufficient detail, it is incumbent upon the rating board to return the report as inadequate for evaluation purposes.

These regulations mandate that more than a mere recitation of a diagnosis is necessary for an adequate evaluation of a mental disorder. "If the medical evidence of record is insufficient, or, in the opinion of the BVA, of doubtful weight or credibility, the BVA is always free to supplement the record by seeking an advisory opinion, ordering a medical examination ... [in order to] clearly support its ultimate conclusions." *Colvin v. Derwinski,* 1 Vet.App. 171, 175 (1990); *see also Murphy v. Derwinski,* 1 Vet.App. 78, 81 (1990); *Gilbert,* 1 Vet.App. at 56–57. Here, the conclusion by the Board that the veteran's disability is only "definite" and warrants only a 30–percent rating seemingly contradicts the statement by the VA psychiatrist, who is also the veteran's treating physician, that the veteran's social adjustment is "Nil" and that his industrial adjustment is "Moderate to Nil."

### C.

In determining that the veteran's condition warrants only a 30–percent rating, the Board stated: "[The veteran] maintains that his service-connected psychophysiological musculoskeletal disorder has increased in disability and prevents him from working.... *We are aware that the veteran has back pain. However, in our opinion the majority of the veteran's disability results from his psychiatric disorder."* *Washington,* BVA 89–03089, at 5 (emphasis added). Then, in the findings of fact the Board found: "The veteran's primary disability is psychophysiological musculoskeletal disorder which is manifested by social isolation, difficulty with interpersonal relationships, headaches and tenderness in his low back." *Id.* at 6. These two statements are contradictory because the first statement excludes the lower back tenderness from the psychophysiological disorder while the second includes it. Both cannot be correct.

The veteran suffers from a psychophysiological musculoskeletal disorder which is rated pursuant to 38 C.F.R. 4.132, Diagnostic Code 9505. Diagnostic Code 9505 is included under the heading "Psychological Factors Affecting Physical Condition." "Psychophysiological" is used to describe the same types of disorders that can also be referred to as "psychosomatic." *Diagnostic and Statistical Manual of Mental Disorders* (DSM–III–R) 333 (3d ed. 1987). "Psychosomatic" is defined as "pertaining to the mind-body relationship; having bodi-

ly symptoms of a psychic, emotional, or mental origin." *Dorland's Medical Dictionary* 1385 (27th ed. 1988). The rating schedule, recognizing the mind-body relationship of this illness, includes the following note:

> When two diagnoses, one organic and the other psychological or psychoneurotic, are presented covering the organic and psychiatric aspects of a single disability entity, only one percentage evaluation will be assigned under the appropriate diagnostic code determined by the rating board to represent the major degree of disability.

38 C.F.R. § 4.132, Psychological Factors Affecting Physical Condition, Diagnostic Codes 9500–11, Note (2) (1990).

The first statement by the Board that the back condition is a separate disease entity and apart of the psychosomatic illness begs for medical support from the record or for additional medical authority. *Colvin,* 1 Vet.App. at 175; *see also Murphy,* 1 Vet. App. at 81; *Gilbert,* 1 Vet.App. at 56–57. Such medical support is especially needed as the statement contradicts the Board itself in the findings of fact and the rating schedule's instructions in Note (2). Without "reasons or bases" and medical support, the Board's decision cannot be properly reviewed by this Court.

### III.

■ The Board in its discussion of the issue of unemployability stated: "Although the veteran has a significant psychiatric disorder, his service-connected disabilities alone do not preclude him from employment in a *relatively low stress job* which does not involve heavy manual labor." *Washington,* BVA 89–03089, at 6 (emphasis added). However, this conclusion directly contradicts the statement from the treating physician: "*Any* stress will trigger muscle pain and tension headaches." R. at 37 (emphasis added). Low stress is not no stress. The Board improperly substituted its judgment on a medical question, *i.e.,* how much stress can the veteran withstand before suffering his psychosomatic syndrome, and did so without any discus-

sion, or support. *See Colvin.* In its discussion of whether the veteran's disabilities render him incapable of maintaining employment, the Board again failed to provide "reasons or bases" to support its conclusion that appellant is employable. *Hatlestad v. Derwinski,* 1 Vet.App. 164 (1991) (the Board's analysis must supply the "reasons or bases" required by 38 U.S.C. § 7104(d)(1) for the conclusion that the veteran is employable); *Hyder v. Derwinski,* 1 Vet.App. 221 (1991); *Ferraro v. Derwinski,* 1 Vet.App. 326 (1991).

The Board found as fact that "[t]he veteran's service-connected disabilities are not of such nature or severity as to prevent him from some type of gainful employment." *Washington,* BVA 89–03089, at 6. The Board relied upon appellant's school attendance to support its conclusion that he is employable; however, there is no evidence in the record before this Court that the veteran is successfully pursuing his studies. In addition, as counsel for appellant stated at oral argument, the skills needed to attend school are different from the skills needed to compete successfully in the workplace. Although the regulations surrounding the issue of unemployability and pension benefits remain a "confusing tapestry," *Hatlestad,* 1 Vet.App. at 167, bare conclusions that appellant is capable of substantially gainful employment are insufficient. *Hyder,* 1 Vet.App. at 223–24 (citing *Gilbert,* 1 Vet.App. at 56–57).

■ The BVA's employability discussion referenced a Social Security Administration determination that the veteran is unemployable. The A.L.J. decision, which was submitted previously as evidence and was again before the Board as part of this reopened claim, was summarily dismissed by the Board: "The fact that the Social Security Administration has found the veteran totally disabled is certainly considered. However, findings by the Social Security Administration are not binding upon the Department of Veterans Affairs." *Washington,* BVA 89–03089, at 5. While perhaps not binding, a determination by the SSA that an individual is entitled to benefits under its statutes and regulations be-

cause he is "unemployable" is evidence which must be considered by the Board in a manner consistent with the presentation of any evidence offered by a veteran to support his or her contention that the disabilities suffered render the veteran unfit for employment. *See Webster v. Derwinski,* 1 Vet.App. 155, 159 (1991). Although it was "considered," it is unclear what weight, if any, the Board gave to this evidence to reach their conclusion that the veteran is employable.

> Equal weight is not accorded to each piece of material contained in a record; every item of evidence does not have the same probative value. Judgments must be made but they must be accompanied by a "written statement of the Board's findings and conclusions, on all material issues of fact or law presented on the record."

*Gilbert,* 1 Vet.App. at 57 (quoting 38 U.S.C. § 4004(d)(1), recodified as § 7104(d)(1)).

## CONCLUSION

In concluding that the veteran's disability warrants only a 30–percent rating, the Board failed to apply properly the rating criteria contained in Part 4 of C.F.R. The Board also failed to provide "reasons or bases" for the rejection of the VA psychiatrist's diagnosis of the veteran's social and industrial adaptability. Finally, the Board made contradictory statements concerning the nature of the veteran's condition and again failed to properly use the rating schedule.

As the Board failed to apply properly the rating criteria of 38 C.F.R. § 4.132, Diagnostic Code 9509, and failed to provide medical support and "reasons or bases" pursuant to § 7104(d)(1) for its conclusions that the veteran's condition warrants only a 30–percent rating and that appellant is employable, this Court vacates the November 1, 1989, decision and remands the matter for further development in light of this opinion. Of course, as this Court said in *Fletcher v. Derwinski,* 1 Vet.App. 394, 397 (1991), "[a] remand is meant to entail a critical examination of the justification for

the decision. The Court expects that the BVA will reexamine the evidence of record, seek any other evidence the Board feels is necessary, and issue a timely, well-supported decision in this case."

*It is so Ordered.*