# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 17-4220

JUSTINIANO DELRIO, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued August 22, 2019                                    Decided December 19, 2019)

*Alyse E. Galoski*, with whom *Kaitlyn C. Degnan* was on the brief, both of Providence, Rhode Island, for the appellant.

*Brandon T. Callahan*, with whom *Catherine C. Mitrano*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; and *James B. Cowden*, Deputy Chief Counsel, were on the brief, all of Washington, D.C., for the appellee.

Before BARTLEY, *Chief Judge*, and PIETSCH and MEREDITH, *Judges*.

BARTLEY, *Chief Judge*: Veteran Justiniano Delrio appeals through counsel a September 19, 2017, Board of Veterans' Appeals (Board) decision denying entitlement to a total disability evaluation based on individual unemployability (TDIU) on an extraschedular basis prior to October 11, 2006, the effective date of his grant of service connection for fibromyalgia. Record (R.) at 2-15.[1] This appeal, over which the Court has jurisdiction pursuant to 38 U.S.C. §§ 7252(a) and 7266(a), was referred to a panel of the Court, with oral argument, to address whether the effective date of an extraschedular award of TDIU can be earlier than the date of service connection for the disability or disabilities upon which the TDIU award was based. We conclude that it cannot. Nevertheless, because the Board provided inadequate reasons or bases for its conclusion that the veteran was not entitled to TDIU prior to October 11, 2006, based on his service-connected post-traumatic stress disorder (PTSD) alone, we must set aside that portion of the September 2017

---

[1] In the same decision, the Board granted entitlement to TDIU on an extraschedular basis from October 11, 2006, to July 28, 2015. R. at 15. To the extent that that determination is favorable to the veteran, the Court will not disturb it. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170 (2007) ("The Court is not permitted to reverse findings of fact favorable to a claimant made by the Board pursuant to its statutory authority.").

Board decision and remand that matter for further development, if necessary, and readjudication consistent with this decision.

## I. FACTS

Mr. Delrio served on active duty in the U.S. Army from July 1974 to July 1976, with subsequent service in the Army National Guard. R. at 841-42, 924. He also served on active duty from January to July 1991. *See* R. at 1602.

This appeal stems from a July 1996 claim for service connection for PTSD. R. at 2659-62. In June 2005, a VA regional office (RO) granted that claim and assigned a 10% evaluation, R. at 1911-14, 1917-23, based, in part, on a March 2003 VA examination that noted memory problems, disorientation, confusion, depression, avoidant behavior, and social isolation. R. at 1959-60. As relevant here, the examiner opined that the veteran's "avoidant non-social behavior" and lumbar and cervical spine disabilities "reduce[d] his employability." R. at 1960.

Mr. Delrio timely appealed that 10% evaluation and was subsequently afforded additional VA PTSD examinations in November 2005 and August 2008. The November 2005 examiner recorded psychiatric symptoms similar to those noted in March 2003, R. at 437-38, and concluded that those symptoms caused an "inability to function in a social as well as economic setting" due to "fear of friendship, anger, depression[,] and asocial behavior," R. at 438-39. The August 2008 examiner stated that the veteran's PTSD caused a "[d]ecline in functioning and quality of life" but opined that the condition did not cause total occupational and social impairment or occupational and social impairment with deficiencies in most areas. R. at 1560. Based on these examinations and other evidence of record, *see, e.g.*, R. at 178-83, 312-20, 2330, Mr. Delrio was ultimately awarded a higher initial evaluation of 30% effective September 8, 1999—the date he was first diagnosed with PTSD—and an increased 50% evaluation effective July 29, 2015—the date of another VA examination showing worsening. R. at 70-96, 287-307.

Meanwhile, during his appeal of the PTSD evaluation, Mr. Delrio submitted a statement in support of claim (SSC) in October 2006 requesting service connection for Gulf War Illness with multiple joint pain and fibromyalgia. R. at 1739-41. The RO granted him service connection for fibromyalgia in July 2007, assigning a 10% evaluation effective October 11, 2006, the date the RO received the SSC. R. at 1596-612. He filed another SSC in October 2008 requesting an increased

rating, R. at 1533, and was ultimately awarded an increased 40% fibromyalgia evaluation effective October 29, 2008, the date VA received his request, R. at 287-307.

In June 2013, the Board, while processing those appeals, determined that the record had reasonably raised the issue of entitlement to TDIU and remanded that inextricably intertwined issue for initial development and adjudication. R. at 1176, 1179. Although not noted by the Board, the evidence of record at that time included an April 1996 employer disability evaluation finding that the veteran was unable to engage in stress situations or interpersonal relations due to a "mental/nervous impairment," R. at 2044-45; a November 1996 statement from a former supervisor indicating that the veteran's performance had recently declined and that he had become less willing to complete work tasks, R. at 2461; a July 1997 Social Security Administration (SSA) decision awarding disability insurance benefits based, in part, on major depression, R. at 2326-34; and an August 2003 VA PTSD community care note documenting the veteran's report that his last employer "encouraged him to retire due to increased anger and irritability which affected his work," R. at 513.

The RO denied entitlement to TDIU in September 2015, R. at 287-307, and the case was returned to the Board. In December 2016, the Board awarded TDIU on a schedular basis effective July 29, 2015, the date that the veteran's combined disability evaluation met the numeric evaluation requirements of 38 C.F.R. § 4.16(a).[2] R. at 92-95. The Board remanded for extraschedular referral the issue of entitlement to TDIU prior to that date, R. at 95-96, and the VA Compensation Director subsequently determined that an extraschedular TDIU award was not warranted for that period, R. at 34-38. In April 2017, the Appeals Resource Center issued a Supplemental Statement of the Case denying extraschedular TDIU prior to July 29, 2015, R. at 22-33, and the case was sent back to the Board for appellate consideration.

In September 2017, the Board issued the decision currently on appeal. R. at 2-15. The Board reviewed the evidence of record and awarded extraschedular TDIU effective October 11, 2006, the effective date of Mr. Delrio's grant of service connection for fibromyalgia, because the

---

[2] Section 4.16(a) states that TDIU will be awarded when a veteran is "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities" and either has a single disability "ratable at 60[%] or more" or one disability "ratable at 40[%] or more, and sufficient additional disability to bring the combined rating to 70[%] or more." 38 C.F.R. § 4.16(a) (2019); *see Youngblood v. Wilkie*, 31 Vet.App. 412, 416 (2019). If a veteran is "unemployable by reason of service-connected disabilities, but . . . fail[s] to meet the percentage standards set forth in paragraph (a)," the rating agency may refer the case to the Compensation Service Director for consideration of extraschedular TDIU. 38 C.F.R. § 4.16(b); *see Cantrell v. Shulkin*, 28 Vet.App. 382, 387 (2017).

3

evidence of record demonstrated that his service-connected PTSD and fibromyalgia collectively rendered him unemployable. R. at 15. However, the Board denied extraschedular TDIU prior to that date because, "[a]t that time, PTSD was [the veteran's] only service-connected disability, and it was not of such severity as to render him unable to secure or maintain substantially gainful employment." R. at 13. As relevant here, the Board explained that, although the March 2003 and November 2005 VA examiners "opined that the [v]eteran's PTSD interfered with employment," they "did not state that his PTSD symptoms actually rendered him unable to obtain and maintain substantially gainful employment." R. at 14. The Board also pointed out that the August 2008 VA examiner had "stated that the [v]eteran's PTSD symptoms, which were consistent with his PTSD symptoms for the entire period on appeal up to that point, did not result in deficiencies at work or total occupational and social impairment." *Id.* The Board therefore found that a preponderance of the evidence was against awarding extraschedular TDIU based on service-connected PTSD alone prior to October 11, 2006. *Id.* This appeal followed.

## II. ANALYSIS

### A. TDIU Based on PTSD Alone Prior to October 11, 2006

#### 1. The Parties' Arguments & the Secretary's Concession of Error

Mr. Delrio argues that the Board erred in denying entitlement to TDIU based on PTSD alone prior to October 11, 2006, because it failed to articulate a clear standard for what constitutes a substantially gainful occupation under § 4.16(b). Appellant's Brief (Br.) at 7-10; Reply Br. at 12-14. He also asserts that the Board provided inadequate reasons or bases for that portion of its decision because, inter alia, it improperly characterized the March 2003 and November 2005 VA examiners' silence as to whether the veteran was unemployable as evidence that he was, in fact, employable; adopted the August 2008 VA examiner's negative opinion as its own without reconciling that opinion with the other evidence of record or otherwise conducting an independent analysis of whether PTSD precluded substantially gainful employment; and overlooked material evidence that was potentially favorable to him. Appellant's Br. at 14-23; Reply Br. at 6-12.

The Secretary initially disputed each of those contentions and urged the Court to affirm the Board decision. Secretary's Br. at 14-27. However, shortly before oral argument, the Secretary informed the Court that his position had changed and that he now concedes that the Board provided inadequate reasons or bases for its decision because its TDIU analysis did not comply with the

4

Court's March 2019 decision in *Ray v. Wilkie*, 31 Vet.App. 58 (2019). Secretary's August 13, 2019, Notice to the Court. He asks the Court to vacate and remand the decision on appeal so that the Board can readjudicate entitlement to TDIU prior to October 11, 2006, in accordance with *Ray* and order any development it deems necessary in light of that precedent. *Id*. At oral argument, the Secretary clarified that he is only conceding the *Ray* error and, although he generally contends that the veteran's other reasons-or-bases arguments may require the Board to reassess the evidence in accordance with *Ray*, he continues to oppose the veteran's arguments as a basis for remand. Oral Argument (Arg.) at 40:16-41:42.

## 2. *The Board's Failure to Comply with* Ray

The Court agrees with the Secretary that the Board's TDIU analysis does not comport with *Ray*. In that case, the Court held that the phrase "unable to secure and follow a substantially gainful occupation" in § 4.16 has economic and noneconomic components, the latter of which focuses on the individual veteran's ability to perform the physical and mental acts necessary for such an occupation. *Ray*, 31 Vet.App. at 73; *see Van Hoose v. Brown*, 4 Vet.App. 361, 363 (1993) (clarifying that, for TDIU purposes, "[t]he question is whether the veteran is capable of performing the physical and mental acts required by employment" (emphasis omitted)). The Court explained that, for the Board to adequately address the noneconomic component of § 4.16, it must give "attention" to factors that may affect the veteran's "mental ability to perform the activities required by the occupation at issue," such as "the veteran's limitations, if any, concerning memory, concentration, ability to adapt to change, handle work place stress, get along with coworkers, and demonstrate reliability and productivity." *Ray*, 31 Vet.App. at 73 (citing *Gleicher v. Derwinski*, 2 Vet.App. 26, 28 (1991); *Washington v. Derwinski*, 1 Vet.App. 459, 465 (1991)). The Court noted, however, that "discussion of any factor is only necessary if the evidence raises [its potential applicability]." *Id*.

The evidence of record in this case suggests that Mr. Delrio's service-connected PTSD caused memory, concentration, and stress management issues that interfered with his ability to work.[3] *See, e.g.*, R. at 2044-45 (former employer's April 1996 assessment that the veteran was

---

[3] The Court acknowledges that the Board in part addressed this evidence, R. at 14, and that the veteran challenges the adequacy of the Board's reasons or bases for affording minimal or no probative weight to the evidence, Appellant's Br. at 15-19; Reply Br. at 11-12. However, as noted above, the Secretary concedes that the Board may need to reevaluate the evidence to comply with *Ray*. Thus, the Court will not address each of the veteran's reasons-or-bases arguments at this time. He is free to raise these specific arguments below and the Board is required

unable to engage in stress situations or interpersonal relations due to a "mental/nervous impairment"), 2461 (former supervisor's November 1996 statement regarding the veteran's declining work performance), 178-83 (November 1996 private psychiatric records describing the veteran's social isolation, nonexistent interpersonal relationships, memory problems, and diminished attention and concentration), 2330 (July 1997 SSA decision noting evidence of severe depression, impaired judgment and insight, and a limited capacity to cope with stress, relate to others, and persist in a task), 1959-60 (March 2003 VA psychiatric examination reflecting complaints of memory problems, disorientation, confusion, depression, avoidant behavior, and social isolation that "reduce[d] his employability"), 513 (veteran's August 2003 report that his last employer "encouraged him to retire due to increased anger and irritability which affected his work"), 438-39 (November 2005 VA psychiatric examiner's opinion that the veteran's PTSD "interfere[d] with employment and social functioning due to his fear of friendship, anger, depression[,] and asocial behavior" and that his PTSD caused an "inability to function in a social as well as economic setting").

Because *Ray* mandates that the Board discuss each of those limitations, when raised, in order to adequately address the noneconomic component of TDIU, the Board's failure to do so in this case renders inadequate its reasons or bases for denying TDIU based on PTSD alone prior to October 11, 2006. *See* 31 Vet.App. at 73-74; *Caluza v. Brown*, 7 Vet.App. 498, 506 (1995) (explaining that, to satisfy its statutory reasons-or-bases requirement, the Board must analyze the credibility and probative value of evidence, account for evidence it finds persuasive or unpersuasive, and provide reasons for its rejection of material evidence favorable to the claimant), *aff'd per curiam*, 78 F.3d 604 (Fed. Cir. 1996) (table); *Schafrath v. Derwinski*, 1 Vet.App. 589, 592 (1991) (mandating that the Board discuss all provisions of law and regulation that are made "potentially applicable through the assertions and issues raised in the record"). The Court therefore accepts the Secretary's concession of error and will remand the case for the Board to issue a decision that complies with *Ray*. *See Tucker v. West*, 11 Vet.App. 369, 374 (1998) (holding that remand is the appropriate remedy "where the Board has incorrectly applied the law, failed to provide an adequate statement of reasons or bases for its determinations, or where the record is otherwise inadequate").

---

to consider them. *See Kay v. Principi*, 16 Vet.App. 529, 534 (2002) (stating that, on remand, the Board must consider additional evidence and argument in assessing entitlement to the benefit sought).

### 3. Other Reasons-or-Bases Errors

Although the Court has already determined that this case must be remanded to correct the *Ray* error conceded by the Secretary, we are compelled to address three other reasons-or-bases errors committed by the Board that, without our intervention, appear likely to recur on remand. *See Quirin v. Shinseki*, 22 Vet.App. 390, 396 (2009) (holding that, to provide guidance to the Board, the Court may address an appellant's other arguments after determining that remand is warranted); *see, e.g.*, *McCray v. Wilkie*, 31 Vet.App. 243, 258-59 (2019).

First, the Board incorrectly characterized the March 2003 and November 2005 VA examiners' silence as to Mr. Delrio's unemployability as evidence that his PTSD did not render him unemployable. R. at 14. As the Court has previously explained, the absence of evidence on a particular question cannot be construed as negative evidence against a claimant unless there is a foundation in the record that demonstrates that such silence has a tendency to prove or disprove a relevant fact. *See Fountain v. McDonald*, 27 Vet.App. 258, 272 (2015); *Horn v. Shinseki*, 25 Vet.App. 231, 239 n.7 (2012); *Buczynski v. Shinseki*, 24 Vet.App. 221, 224 (2011). The logic underlying this rule is that silence in a given record only tends to prove nonoccurrence if "'the records were kept in such a way that the matter would have been recorded had it occurred.'" *AZ v. Shinseki*, 731 F.3d 1303, 1317 (Fed. Cir. 2013) (quoting 5 Jack B. Weinstein & Margaret A. Berger, *Weinstein's Federal Evidence* § 803.09 (2d ed. 2012) (emphasis omitted)).

Consequently, the foundation for drawing a negative inference from a record's silence is ordinarily established by showing that "'a record was regularly kept' for the type of event in question" or that it was "reasonable to expect the event to have been recorded." *Id.* at 1316-17 (quoting FED. R. EVID. 803(7), (10)(B)). Absent such a foundation, the absence of evidence "provides neither positive nor negative support" for a claim because such silence does not necessarily have the tendency to prove or disprove a relevant fact. *Fagan v. Shinseki*, 573 F.3d 1282, 1289 (Fed. Cir. 2009); *see AZ*, 731 F.3d at 1318 ("[W]here an alleged sexual assault . . . is not reported, the absence of service records documenting the alleged assault is not pertinent evidence that the assault did not occur."); *Horn*, 25 Vet.App. at 239 n.7 (concluding that the Board erred in relying on a lack of service records documenting a medical condition because "there is no evidentiary foundation, or even a logical reason to suppose," that the condition would have been recorded during the veteran's treatment); *Buczynski*, 24 Vet.App. at 224 (holding that a doctor's failure to assess the repugnance of a condition was "not a situation where the silence in regard to

a condition can be taken as proof that a doctor did not observe the symptom" because there did "not appear to be any medical reason why a doctor would be expected to comment on the repugnance of a condition").

Here, the Board found that the March 2003 and November 2005 VA examiners' opinions weighed against an award of TDIU based on PTSD alone prior to October 11, 2006, because the examiners opined only that the veteran's PTSD interfered with employment and "did not state that his PTSD symptoms actually rendered him unable to obtain and maintain substantially gainful employment." R. at 14. The Board did not, however, lay the necessary foundation for construing the examiners' silence on that issue as substantive evidence against Mr. Delrio. Significantly, the Board did not identify a section in either examination report that specifically addressed the veteran's unemployability nor did the Board otherwise explain why it would have been reasonable to expect that the examiners would have commented on that issue in examinations that were not expressly provided for TDIU purposes. *See AZ*, 731 F.3d at 1316-17; *Moore v. Nicholson*, 21 Vet.App. 211, 219 (2007) (holding that, although "[t]he requirement that medical examiners provide a report adequate for a rating decision will frequently require them to discuss . . . how the disability manifests itself in the claimant's ordinary activities, which include employment," "it does not require medical examiners to offer opinions on the general employability of a claimant"), *rev'd on other grounds sub nom. Moore v. Shinseki*, 555 F.3d 1369 (Fed. Cir. 2009). Absent such an evidentiary foundation, the examiners' silence would not have a tendency to prove whether the veteran's PTSD rendered him unemployable, and the Board was therefore prohibited from characterizing their silence on the issue as substantive evidence against entitlement to TDIU. *See AZ*, 731 F.3d at 1318; *Fagan*, 573 F.3d at 1289; *Horn*, 25 Vet.App. at 239 n.7; *Buczynski*, 24 Vet.App. at 224. To the extent that the Board did just that, it erred.

Second, the Board's assessment of the March 2003, November 2005, and August 2008 VA medical examinations appears to be based, in part, on a misunderstanding of the distinct roles of medical examiners and adjudicators in the veterans benefits system. Medical examiners are "nothing more or less than expert witnesses" who provide opinions on medical matters. *Nieves-Rodriguez v. Peake*, 22 Vet.App. 295, 302 (2008); *see Gabrielson v. Brown*, 7 Vet.App. 36, 40 (1994) (noting that a medical opinion is "only that, an opinion" providing medical evidence). Their function is to provide VA adjudicators—who generally lack the expertise and competence to opine on medical matters, *see Kahana v. Shinseki*, 24 Vet.App. 428, 438 (2011) (Lance, J., concurring);

*Colvin v. Derwinski*, 1 Vet.App. 171, 172 (1991), *overruled on other grounds by Hodge v. West*, 155 F.3d 1356 (Fed. Cir. 1998)—with the medical information and analysis necessary to decide a claim. *See* 38 C.F.R. § 4.1 (2019) ("For the application of [the rating] schedule, accurate and fully descriptive medical examinations are required. . . ."); 38 C.F.R. § 4.10 (2019) (assigning to medical examiners "the responsibility of furnishing . . . full description of the effects of disability upon the person's ordinary activity"). It is the responsibility of VA adjudicators, not medical examiners, to make the findings of fact and law necessary to decide a claimant's entitlement to disability benefits. *See Withers v. Wilkie*, 30 Vet.App. 139, 146 (2018) ("[E]xaminers provide evidence; they are not permitted to opine on legal or adjudicative matters."); *Moore*, 21 Vet.App. at 218 ("The medical examiner provides a disability evaluation and the rating specialist interprets medical reports in order to match the rating with the disability."); 38 C.F.R. § 3.100(a) (2019) (delegating the Secretary's authority "to make findings and decisions . . . as to entitlement of claimants to benefits" to, inter alia, VA "adjudicative personnel"); 38 C.F.R. § 4.2 (2019) ("It is the responsibility of the rating specialist to interpret reports of examination . . . so that the current rating may accurately reflect the elements of disability present."). Given this division of responsibilities, the Board errs when it relies on a medical examiner's opinion on a purely adjudicative matter. *See, e.g.*, *D'Aries v. Peake*, 22 Vet.App. 97, 106 (2008) (per curiam) ("[T]he benefit of the doubt doctrine is a legal construct to be applied by an adjudicatory body . . . , not by a medical professional when rendering an opinion."); *Moore*, 21 Vet.App. at 218 (noting that it is the duty of VA adjudicators, not medical examiners, to apply the appropriate legal standard); *Sizemore v. Principi*, 18 Vet.App. 264, 275 (2004) (faulting a VA examiner for "expressing an opinion on whether the appellant's claimed in-service stressors have been substantiated, [which] is a matter for determination by the Board and not a medical matter").

In the context of TDIU, "applicable regulations place responsibility for the ultimate TDIU determination on the VA, not a medical examiner." *Geib v. Shinseki*, 733 F.3d 1350, 1354 (Fed. Cir. 2013). Specifically, "TDIU is to be awarded based on the 'judgment of the rating agency' that the veteran is 'unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities.'" *Floore v. Shinseki*, 26 Vet.App. 376, 381 (2013) (quoting 38 C.F.R. § 4.16(a)). That determination is not medical in nature, and it is not the province of medical examiners to opine on whether a veteran's service-connected disabilities preclude substantially gainful employment. *See Geib*, 733 F.3d at 1354; *Floore*, 26 Vet.App. at 381; *see generally Ray*,

9

31 Vet.App. at 71-74 (detailing the economic and noneconomic components of the substantially-gainful-employment inquiry). Of course, medical examiners may assist VA adjudicators in making that determination by providing detailed descriptions of the veteran's disabilities and any functional limitations that they cause. *See Withers*, 30 Vet.App. at 142. But the authority to make the ultimate determination of whether a veteran meets the § 4.16 standards for TDIU belongs exclusively to the VA adjudicator and may not be delegated out to one of the agency's medical examiners. *See Geib*, 733 F.3d at 1354; *Floore*, 26 Vet.App. at 381.

With this framework in mind, we return to the decision currently on appeal. As noted above, the Board found that the March 2003 and November 2005 VA examinations weighed against entitlement to TDIU based on PTSD alone prior to October 11, 2006, because the examiners "did not state that [the veteran's] PTSD symptoms actually rendered him unable to obtain and maintain substantially gainful employment." R. at 14. Although neither examiner actually opined on that adjudicative issue, *see* R. at 437-39, 1959-61, the Board's apparent expectation that they would evinces a misunderstanding of the distinctive responsibilities of medical examiners and adjudicative personnel and demonstrates that the Board misapplied the law for determining whether the veteran's PTSD rendered him unable to secure and follow a substantially gainful occupation. *See Geib*, 733 F.3d at 1354; *Floore*, 26 Vet.App. at 381.

Similarly, to the extent that the Board found that the August 2008 VA medical examination weighed against an award of TDIU based on PTSD alone prior to October 11, 2006, because the examiner opined that the veteran did not meet the schedular criteria for a 100% evaluation for PTSD, R. at 14, the Board erred in equating the examiner's finding that the veteran's PTSD did not cause total occupational and social impairment with an inability to obtain and maintain substantially gainful employment. *See Roberson v. Principi*, 251 F.3d 1378, 1385 (Fed. Cir. 2001) ("Requiring a veteran to prove that he is 100[%] unemployable is different than requiring the veteran to prove that he cannot maintain substantially gainful employment."). Although the Board should consider an examiner's findings regarding the manner and extent to which a veteran's PTSD symptoms affect his or her ability to work when deciding entitlement to TDIU, *see Withers*, 30 Vet.App. at 142, the Board cannot uncritically adopt an examiner's assessment of the veteran's level of disability as its own without reconciling that assessment with the other evidence of record, *see Gabrielson*, 7 Vet.App. at 40. Nor can the Board outsource to a medical examiner its independent responsibility to make an adjudicative determination as to entitlement to a claimed

10

disability evaluation, including TDIU. *See Geib*, 733 F.3d at 1354; *Withers*, 30 Vet.App. at 146; *Floore*, 26 Vet.App. at 381; *Moore*, 21 Vet.App. at 218. The Board committed both of those errors here when it summarily concluded that the August 2008 VA medical examination weighed against entitlement to TDIU based solely on the examiner's conclusion that the veteran's PTSD did not warrant a 100% evaluation. R. at 14.

Finally, the Board did not address material evidence that was potentially favorable to Mr. Delrio's entitlement to TDIU, including his August 2003 report to a VA social worker that his former employer "encouraged him to retire due to increased anger and irritability which affected his work." R. at 513. Because that evidence tends to support his assertions that PTSD rendered him unable to secure and follow a substantially gainful occupation prior to October 11, 2006, the Board was obligated to address it. *See Caluza*, 7 Vet.App. at 506. The Board's failure to do so further justifies remand. *See Tucker*, 11 Vet.App. at 374.

### B. Consideration of Fibromyalgia Prior to October 11, 2006

The foregoing disposition does not, however, resolve the question of whether the Board on remand is required to address Mr. Delrio's fibromyalgia when deciding whether he is entitled to TDIU prior to October 11, 2006. For the following reasons, we conclude that the Board need not do so because the veteran was not service connected for fibromyalgia prior to that date.

### 1. The Parties' Arguments

Mr. Delrio primarily argues that the Board erred in not considering the effects of his service-connected fibromyalgia when assessing his entitlement to TDIU before October 11, 2006, because, once VA determined that his fibromyalgia was related to service, the effective date for the grant of service connection for that condition became "irrelevant" and the only issue left to resolve was "whether the symptoms of that now-recognized service-connected disability contributed to [his] inability to engage in substantially gainful employment." Appellant's Br. at 12; *see* Reply Br. at 1. He asserts that he was prejudiced by the Board's failure to consider his fibromyalgia symptoms prior to October 11, 2006, because the record reflects that he was first diagnosed with fibromyalgia in 1991 and that the widespread pain he has experienced since service contributed to his unemployability, warranting an earlier effective date for TDIU based on the combined effects of his PTSD and fibromyalgia. Appellant's Br. at 13-14.

The veteran's argument is premised on *Frost v. Shulkin*, 29 Vet.App. 131, 138 (2017), where the Court held that 38 C.F.R. § 3.310—a secondary service connection regulation with some

language similar to § 4.16—did not contain an express temporal requirement and therefore did not preclude a grant of secondary service connection for a disability based on a primary disability that was service connected at the time of the secondary service connection decision but not at the time of incurrence of the secondary disability. Appellant's Br. at 10-12; Reply Br. at 1-6. He extrapolates from *Frost* that, so long as a disability is service connected at the time that VA decides entitlement to TDIU based in part on that disability, § 4.16's lack of an express temporal requirement allows VA to consider the effects of that disability on unemployability throughout the TDIU period on appeal, regardless of the effective date of service connection for the disability. Appellant's Br. at 12; Reply Br. at 4.

Mr. Delrio's argument also relies on the unique characteristics of TDIU and the fact that § 4.16(a) refers to "ratable," rather than "rated," service-connected disabilities.[4] In his view, these features of § 4.16 mean that a disability need only be service connectable, not service connected, to be considered in the TDIU effective date inquiry. Appellant's Br. at 11-12 (arguing that the term "ratable" "encompasses the possibility of a rating[] and does not demand an established one"); Oral Arg. at 7:16-:57; *see* Reply Br. at 2-4. As specific support for this proposition, he points to *Gazelle v. Shulkin*, 868 F.3d 1006, 1011 (Fed. Cir. 2017), where the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) held that "ratable" in a special monthly compensation (SMC) statute means "*capable of* being rated or estimated," as opposed to actually rated. Reply Br. at 2-4 (emphasis added).

The Secretary responds that *Frost* is distinguishable from the instant case because it involved secondary service connection under § 3.310 and not TDIU under § 4.16. Secretary's Br. at 11-14. He argues that TDIU, unlike secondary service connection, is "premised on a specific

---

[4] The Court notes that, although Mr. Delrio's argument focuses on the language in 38 C.F.R. § 4.16(a), he is seeking entitlement to TDIU pursuant to 38 C.F.R. § 4.16(b). Section 4.16(b) does not contain the word "ratable" or the corresponding instructions for tabulating disability evaluations for TDIU purposes, *see Youngblood*, 31 Vet.App. at 417, but that portion of § 4.16(a) is expressly incorporated into § 4.16(b) by reference and § 4.16(b), by its terms, applies to "all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities," 38 C.F.R. § 4.16(b) (specifying that paragraph (b) applies to all cases of individuals "who fail to meet the percentage standards set forth in paragraph (a) of this section"); *see Cantrell*, 28 Vet.App. at 388 n.5 (noting that "[a]lthough the term 'marginal employment' appears only in § 4.16(a), there is nothing in the regulation to suggest, nor has the Secretary asserted, that VA is precluded from determining that marginal employment exists for purposes of referring a case for consideration of extraschedular TDIU under § 4.16(b)"); *see generally Vazquez–Claudio v. Shinseki*, 713 F.3d 112, 115 (Fed. Cir. 2013) ("In construing regulatory language, we must read the disputed language in the context of the entire regulation as well as other related regulatory sections in order to determine the language's plain meaning.").

period of time" and a determination as to a TDIU effective date expressly excludes consideration of disabilities that are not service connected during that specific period. *Id*. at 12-13.

### 2. The Effective Date for TDIU Cannot be Earlier than the Effective Date of Service Connection for the Underlying Disability or Disabilities

Interpretation of a regulation is a legal question that the Court reviews de novo. *See Moody v. Wilkie*, 30 Vet.App. 329, 336 (2018) (per curiam).

We begin our analysis of the parties' dispute from the well-settled position that TDIU is, at bottom, an evaluation for a service-connected disability or disabilities. *See Rice v. Shinseki*, 22 Vet.App. 447, 453 (2009) (per curiam) (holding that "a request for TDIU . . . is not a separate claim for benefits, but rather involves an attempt to obtain an appropriate rating for a disability or disabilities"). Section 4.16, like other evaluation regulations in part 4 of title 38 of the Code of Federal Regulations, specifies the criteria that must be met to be entitled to disability compensation payment at a given rate. Inherent in each of those evaluation regulations, and the statutes that authorize payment of disability compensation in general, *see* 38 U.S.C. §§ 1110, 1131, is the requirement that the disability being evaluated has been determined to be service connected. *See Grantham v. Brown*, 114 F.3d 1156, 1158-59 (Fed. Cir. 1997) (characterizing evaluation of a disability as a downstream issue from service connection of the disability); 38 C.F.R. pt. 4 (entitled Schedule for Rating Disabilities). This base temporal requirement in part 4 means that compensation cannot be paid for a disability, at any evaluation level, before the effective date of service connection for the disability.

Mr. Delrio asks us to carve out an exception from this general compensation payment rule for TDIU, but neither § 4.16's unique characteristics nor its linguistic similarities to the regulation at issue in *Frost* justify such an exception. As to the veteran's first contention, the Court agrees that TDIU is sui generis insofar as it is the only disability evaluation that (1) is based on an individual's particular circumstances rather than average impairment in earning capacity, *see Pederson v. McDonald*, 27 Vet.App. 276, 286 (2015) (en banc) (citing *Rice*, 22 Vet.App. at 452); *see also* 38 C.F.R. § 4.1; and (2) may take into account the cumulative effect of multiple service-connected disabilities, *see Geib*, 733 F.3d at 1354 (citing 38 C.F.R. §§ 4.15, 4.16). *See* Oral Arg. at 6:43-7:15. But those peculiarities do not overcome the plain language of § 4.16, which expressly directs that "the existence or degree of nonservice-connected disabilities . . . will be disregarded" when determining entitlement to TDIU. 38 C.F.R. § 4.16(a); *see Van Hoose*, 4 Vet.App. at 363 (emphasizing that, when deciding entitlement to TDIU, the "Board's task [is] to determine whether

13

there are circumstances . . . apart from the non-service-connected conditions and advancing age which would justify [TDIU]" (emphasis omitted)); *Pratt v. Derwinski*, 3 Vet.App. 269, 272 (1992) (holding that the Board "was required to decide, without regard to the non-service-connected disabilities or his age, whether appellant's service-connected disabilities are sufficiently incapacitating as to render [the veteran] unemployable"); *see also Pacheco v. Gibson*, 27 Vet.App. 21, 25 (2014) (en banc) ("If the meaning of [a regulation] is clear from its plain language, that meaning controls and that is the end of the matter."). Prior to October 11, 2006, fibromyalgia was a non-service-connected disability, and the Board was therefore required to disregard its effects when determining whether the veteran's service-connected disabilities precluded substantially gainful employment.

Mr. Delrio seeks to avoid this conclusion by arguing that § 4.16(a)'s requirement that a disability or disabilities be "ratable," rather than "rated," at specified disability levels means that a disability need not be service connected for the entire period for which TDIU is sought to be factored into the substantially gainful employment analysis. Appellant's Br. at 11-12; Reply Br. at 2-4; Oral Arg. at 7:16-:57. But this argument reads too much into the term "ratable."

As noted above, *supra* note 2, one of the requirements for an award of TDIU under § 4.16(a) is a single disability "ratable at 60[%] or more" or one disability "ratable at 40[%] or more, and sufficient additional disability to bring the combined rating to 70[%] or more." 38 C.F.R. § 4.16(a). Although Mr. Delrio is correct that the Federal Circuit in *Gazelle* held that "ratable" in 38 U.S.C. § 1114(s)—a statute authorizing the payment of SMC where a veteran has "a service-connected disability rated as total" and, as relevant here, "additional service-connected disability or disabilities independently ratable at 60[%] or more"—means "'capable of being rated or estimated,'" 868 F.3d at 1011 (quoting WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY VOLUME II, 1884 (1986)), he overlooks that the Federal Circuit qualified that definition by holding that a disability or disabilities is only "ratable" at a given level if rated at or above that level individually or through application of the combined ratings table in 38 C.F.R. § 4.25(b), *id.* at 1011-12. Applying that considerably narrower definition of "ratable" to the facts of *Gazelle*, the Federal Circuit held that section 1114(s) "unambiguously requires the veteran's additional disabilities be *rated* at least at [60%] based upon the combined ratings table and not the addition of individual disability ratings," as the veteran had argued. *Id.* at 1012 (emphasis added) (emphasis

14

omitted). One year later, the Court expressly adopted and applied the Federal Circuit's reasoning in *Gazelle*, including the definition of "ratable," to § 4.16(a). *Moody*, 30 Vet.App. at 335-39.

*Gazelle* and *Moody* directly refute Mr. Delrio's construction of "ratable" in § 4.16(a). Consistent with those cases, TDIU may only be awarded under § 4.16(a) if the veteran has either (1) one disability "ratable" at 60% or more—i.e., a single disability evaluated as at least 60% disabling or multiple disabilities treated as "one disability" for TDIU purposes that can be combined via § 4.25(b) to reach at least 60%; or (2) one disability "ratable at 40[%] or more"— i.e., a single disability evaluated as at least 40% disabling or multiple disabilities treated as "one disability" for TDIU purposes that can be combined via § 4.25(b) to reach at least 40%—with "sufficient additional disability to bring the combined rating to 70[%] or more." 38 C.F.R. § 4.16(a). This definition of "ratable" accords not only with our prior observation that "ratable" and "rated" have different meanings in the VA benefits context, *see Gazelle v. McDonald*, 27 Vet.App. 461, 467 (2016), *aff'd sub nom. Gazelle v. Shulkin*, 868 F.3d 1006 (Fed. Cir. 2017), but also with part 4's base temporal requirement and § 4.16(a)'s prohibition against considering non-service-connected disabilities in the TDIU inquiry.

Contrary to Mr. Delrio's contentions, *Frost* does not compel a different outcome. The issue in *Frost* was "whether a veteran [was] precluded, as a matter of law, from obtaining secondary service connection on a causation basis when the secondary condition was incurred prior to the grant of service connection for, or diagnosis of, the primary condition." 29 Vet.App. at 134. The Court held that secondary service connection was available in that situation because § 3.310(a) does not contain an express temporal requirement and any such requirement would make "little sense" given the "protracted nature of veterans benefits claims adjudication" and the fact that "a veteran has no obligation to file a [disability] compensation claim as soon as he or she becomes aware of [a] disability." *Id*. at 137-38. Instead, the Court indicated that the only temporal requirement affiliated with § 3.310(a) "is one of basic logic that the Court has referenced in previous cases, i.e., that 'there must be a primary service-connected condition for a claimant to establish entitlement to secondary service connection'"; in other words, "at the time that any decision establishing entitlement to secondary service connection is rendered, there must be a primary service-connected condition." *Id*. at 138 (emphasis omitted) (quoting *Smith v. Shinseki*, 24 Vet.App. 40, 49 (2010)).

The essential difference between *Frost* and this case is that *Frost* involved § 3.310, a secondary service connection regulation, whereas Mr. Delrio's appeal involves § 4.16, a disability evaluation regulation that prescribes a compensation payment rule. This distinction is critical because, unlike § 3.310, § 4.16 contains the additional base temporal requirement and limit on consideration of non-service-connected disabilities discussed above. Because entitlement to TDIU under § 4.16 is subject to these additional "temporal prerequisites," it is fundamentally different from § 3.310, which was temporally limited only by the requirement that a veteran have a service-connected disability when entitlement to secondary service connection is decided. *Frost*, 29 Vet.App. at 138. Mr. Delrio's arguments based on *Frost* therefore fail.

To be clear, the lesson of *Frost* is not that benefits may be awarded independent of the effective date of service connection for an underlying disability, as the veteran asserts. Rather, *Frost* is limited to its facts and stands for the proposition that, to later support a grant of secondary service connection, a primary disability need not be service connected or even diagnosed at the time that a secondary disability is incurred. 29 Vet.App. at 138. *Frost* is concerned with causation for secondary service connection purposes; it does not permit or require VA to ignore the effective date of a grant of service connection when assigning an evaluation based on that service-connected disability. As such, *Frost* is inapposite and the veteran's reliance on it is misplaced.

Accordingly, the Court holds that the effective date of TDIU cannot be earlier than the effective date of the award of service connection for the disability or disabilities upon which the award of TDIU is based. To hold otherwise would create the absurd result that a veteran could be paid compensation at the total disability rate under § 4.16 for a disability prior to the date that a grant of service connection became effective. As the Court has recognized in prior cases, albeit without a full analysis, that simply cannot be the case. *See Ross v. Peake*, 21 Vet.App. 528, 534 (2008) (concluding that the effective date for a schedular award of TDIU based on service-connected depression with anxiety could not "be earlier than the date of [the veteran's] claim for secondary service connection for [those conditions]"), *aff'd per curiam sub nom. Ross v. Shinseki*, 309 F. App'x 394 (Fed. Cir. 2009); *Canady v. Nicholson*, 20 Vet.App. 393, 398 (2006) (explaining that, "as a matter of law, the assignment of a [schedular] TDIU rating could not be effective earlier than the effective date of his award of service connection" for the underlying disability). Consequently, the Court concludes that, on remand, the Board need not address the effects of the

16

veteran's fibromyalgia on his ability to secure and follow a substantially gainful occupation prior to October 11, 2006.

Mr. Delrio is free on remand, however, to present to the Board any additional arguments and evidence pertinent to his entitlement to TDIU based on PTSD alone prior to that date. *See Kay*, 16 Vet.App. at 534; *Kutscherousky v. West*, 12 Vet.App. 369, 372-73 (1999) (per curiam order). The Court reminds the Board that "[a] remand is meant to entail a critical examination of the justification for [the Board's] decision," *Fletcher v. Derwinski*, 1 Vet.App. 394, 397 (1991), and must be performed in an expeditious manner in accordance with 38 U.S.C. § 7112.

## III. CONCLUSION

Upon consideration of the foregoing, the portion of the September 19, 2017, Board decision denying entitlement to TDIU based on PTSD alone prior to October 11, 2006, is SET ASIDE and that matter is REMANDED for further development, if necessary, and readjudication consistent with this decision. The remainder of the Board decision is AFFIRMED.

17