﻿Citation Nr: AXXXXXXXX
Decision Date: 06/29/20 Archive Date: 06/29/20

DOCKET NO. 200407-76876
DATE: June 29, 2020

ORDER

Entitlement to an earlier effective date of March 25, 2011, but no sooner, for the award of a total disability rating based on unemployability due to service-connected disabilities (TDIU) is granted, subject to regulations governing the payment of monetary awards.

FINDING OF FACT

From March 25, 2011, but not before, the Veteran met the schedular criteria for TDIU and his service-connected disabilities were shown to cause him to be unable to secure or follow a substantially gainful occupation.

CONCLUSION OF LAW

The criteria for an earlier effective date of March 25, 2011, but no earlier, for the award of a TDIU have been met. 38 U.S.C. § 5110 (2012); 38 C.F.R. §§ 3.400, 4.16 (2019).

 

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from August 1964 to December 1964 and from September 1967 to December 1969.

This matter is on appeal to the Board of Veterans’ Appeals (Board) from a December 2019 rating decision issued by a Department of Veterans Affairs (VA) Regional Office (RO). 

A March 2019 rating decision granted entitlement to individual unemployability, effective April 4, 2013. In October 2019, VA received the Veteran’s request to have a higher-level review of this decision completed by the RO. The RO issued its higher-level review decision in December 2019. In April 2020, the Veteran submitted a VA Form 10182, Decision Review Request: Board Appeal (Notice of Disagreement), and he selected the Direct Review Lane. Therefore, the Board may only consider the evidence of record at the time of the March 2019 decision. 38 C.F.R. § 20.301. 

TDIU

The Veteran contends that he is entitled to an earlier effective date of March 25, 2011, for an award of TDIU. 

Except as otherwise provided, the effective date of an evaluation and award for pension, compensation, or dependency and indemnity compensation based on an original claim, a claim reopened after a final disallowance, or a claim for increase will be the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110(a); 38 C.F.R. § 3.400. Different statutory and regulatory provisions apply depending on whether the claim is an original claim or one for increased compensation. See 38 C.F.R. § 3.400(b)(2)(i), (o)(2).

A TDIU claim is a claim for increased compensation, and the effective date rules for increased compensation claims apply to a TDIU claim. See Hurd v. West, 13 Vet. App. 449 (2000). The effective date of an award based on a claim for increase is generally the date of receipt of the claim or the date entitlement arose, whichever is later. 38 U.S.C. § 5110; 38 C.F.R. § 3.400. Such a determination will be made based on the facts found. 38 C.F.R. § 3.400(a).

An exception to this rule provides that the effective date of an award for increased disability compensation shall be the earliest date as of which it is factually ascertainable that an increase in disability has occurred, if the claim is received within one year from such date; otherwise, it is the date of receipt of the claim. 38 U.S.C. § 5110(b)(2); 38 C.F.R. § 3.400(o)(2). When considering the appropriate effective date for an increased rating, VA must consider the evidence of disability during the period one year prior to the application. See Hazan v. Gober, 10 Vet. App. 511 (1997).

A claim for a TDIU is part of a rating issue when such claim is raised by the record or the veteran during the rating period. Rice v. Shinseki, 22 Vet. App. 447 (2009). Total disability ratings for compensation may be assigned, where the schedular rating is less than total, when the disabled person is, in the judgment of the rating agency, unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities. 38 C.F.R. §§ 3.340, 3.341, 4.16(a). If there is only one such disability, it must be rated at 60 percent or more, and if there are two or more disabilities, there shall be at least one disability rated at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent. 38 C.F.R. § 4.16(a). For the above purpose of one 60 percent disability or one 40 percent disability in combination, disabilities resulting from common etiology or from a single accident are considered to be one disability. Id. 

The established policy of VA reflects that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled. 38 C.F.R. § 4.16(b). Factors such as employment history and educational and vocational attainments are to be considered. Id. For VA purposes, the term “unemployability” is synonymous with an inability to secure and follow a substantially gainful occupation. VAOPGCPREC 75-91; 57 Fed. Reg. 2317 (1992). The word “substantially” suggests an intent to impart flexibility into a determination of overall employability, as opposed to requiring the appellant to prove that he is 100 percent unemployable. Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001). The United States Court of Appeals for Veterans Claims (Court) has held that “substantially gainful occupation” contains both economic and noneconomic components. Ray v. Wilkie, 31 Vet. App. 58 (2019). The economic component “simply means an occupation earning more than marginal income (outside of a protected environment) as determined by the U.S. Department of Commerce as the poverty threshold for one person. Id. The non-economic component requires consideration of the Veteran’s history, education, skill, and training, and physical and mental ability to perform the activities required by an occupation. Id.

There are three determinations that the Board must make to determine the proper effective date for TDIU. First, the date that VA received the Veteran’s claim. Second, the date that the percentage requirements for section 4.16(a) were met. Third, the date that the Veteran’s service-connected disability or disabilities rendered him unable to secure and follow a substantially gainful occupation; i.e., the date that his service-connected disabilities or disability rendered him unemployable, including whether referral for extraschedular evaluation would be required if the percentage requirements of § 4.16(a) were not met.

First, the Board must consider the date that VA received the Veteran’s claim. As noted above, the Veteran argues for an earlier effective date of March 25, 2011. On March 25, 2011, VA received the Veteran’s claim for entitlement to service connection for posttraumatic stress disorder (PTSD). 

As part of the Veteran’s initial claim for service connection, in July 2011 the Veteran was afforded a VA examination. The Veteran informed the examiner that due to his PTSD symptoms, including being suspicious, irritable, and easily agitated by noises and smells, he had encountered difficulties maintaining a job. The Board concludes that a claim for a TDIU was raised by the record during the rating period under consideration at the July 2011 VA examination. Specifically, the Veteran informed the examiner that his PTSD had caused him to have difficulties maintaining employment. 

A January 2013 rating decision granted service connection for PTSD and assigned a 50 percent disability rating, effective March 25, 2011. The Veteran expressed dissatisfaction with the 50 percent rating in January 2013. 

Here, since the Veteran expressed disagreement with the initial rating assigned for the award of TDIU, the Board finds that the date of claim for TDIU is the date of the claim of service connection and not the date the Veteran first alleged his PTSD rendered him unemployable. Although the Veteran did not specifically state in his March 25, 2011, claim that he was unemployable, the July 2011 VA examination where the Veteran reported having difficulties maintaining employment occurred in conjunction with the claim of service connection that was ultimately granted and rated effective March 25, 2011, and from which the Veteran appealed the rating assigned. 

As such, the Board concludes that the date VA received the Veteran’s TDIU claim was March 25, 2011. 

Next, the Board must determine the date that the percentage requirements for § 4.16(a) were met. In this case, the Veteran has the following compensable service-connected disabilities from March 25, 2011, to April 3, 2013: PTSD, evaluated as 50 percent disabling from March 25, 2011; lumbar degenerative joint disease, status post compression fracture L-3 vertebrae right, with myositis, evaluated as 20 percent disabling from November 27, 2006; right lower extremity nerve damage associated with lumbar degenerative joint disease, status post compression fracture L-3 vertebrae right, with myositis, evaluated as 10 percent disabling from January 1, 2013; acne vulgaris, evaluated as non-compensable from January 25, 1980; and left lower extremity nerve damage associated with lumbar degenerative joint disease, status post compression fracture L-3 vertebrae right, with myositis, evaluated as noncompensable from January 1, 2013. 

The combination of the Veteran’s service-connected disabilities from March 25, 2011, to April 3, 2013, yields a total disability rating of 60 percent, which does not meet the schedular threshold. See 38 C.F.R. §§ 4.25 and 4.16. However, the Board considers the Veteran’s PTSD and the lumbar degenerative joint disease to be a single disability for purposes of § 4.16(a) as they resulted from a common etiology or single accident. 

Specifically, the Veteran contends that his PTSD and back disability are the result of a fall he sustained in service. The Veteran stated that while he was stationed in Vietnam he was tasked with bringing down explosive ordnances from a building. The Veteran reported that he fell and that he landed on his back. The Veteran noted that while Navy corpsmen were attending to his injuries, multiple casualties were reported. The Veteran indicated that he was placed in a small room and the injured and the casualties were placed in the room with him. The Veteran added that he heard other soldiers crying out in pain and that he was surrounded by dead and dying soldiers. 

A July 2011 VA examiner linked the Veteran’s PTSD to his experiences immediately after his fall, while he received treatment for his back. Similarly, in November 2015, a private provider opined that the stressors the Veteran experienced while receiving treatment for his back resulted in the Veteran’s PTSD. The Board concludes that based on § 4.16, the Veteran’s PTSD and back disabilities resulted from the same single accident. Namely, the Veteran injured his back and while receiving treatment, he was placed in a room with dead and dying soldiers. Private and VA providers have indicated that these experiences caused the Veteran’s PTSD. Thus, the Board resolves doubt in the Veteran’s favor and concludes that the Veteran’s PTSD and back disabilities resulted from the same single accident. The Veteran’s PTSD and the lumbar degenerative joint disease combine for a 60 percent disability rating; therefore, the schedular requirements for § 4.16(a) are met from March 25, 2011. 

Finally, the Board must determine if the Veteran’s service-connected disabilities rendered him unable to secure and follow a substantially gainful occupation from March 25, 2011, to April 3, 2013. 

An April 2011 private treatment note indicates that the Veteran’s PTSD symptoms included irritability, hypervigilance, and extreme anxiety. 

In July 2011, the Veteran was afforded a VA examination for his mental disability. The examiner diagnosed PTSD and major depressive disorder. The examiner noted that the Veteran’s PTSD caused his depressive disorder. The Veteran informed the examiner that he had difficulty maintaining employment over the years because he was suspicious, irritable, and easily agitated by noises. The Veteran reported constant symptoms of hypervigilance, depression, inability to maintain relationships, irritability, inability to concentrate for more than a few minutes, and an exaggerated startle response. The examiner noted that the Veteran’s symptoms of depression and irritability were moderate and that the Veteran’s depressive symptoms made him withdrawn. The examiner documented that the Veteran did not contend that his PTSD resulted in unemployment. 

In July 2011, the Veteran’s former supervisor, D.H., noted that the Veteran retired in 2006. D.H. stated that while the Veteran was under his supervision, there were occasions when the Veteran exhibited unpredictable and angry moods. D.H. added that the Veteran suffered from paranoia and that these traits created cohesive problems with the other workers. 

In February 2012 correspondence, the Veteran commented on his abusive and assaultive tendencies and on his inability to handle criticism. The Veteran elaborated that he almost physically assaulted a physician that asked him to remove his cap. The Veteran added that during his July 2011 VA examination he misunderstood the examiner when he was asked about the impact of PTSD on employment. He explained that he told the examiner that his PTSD did not have any effect on his employment because he was retired. 

In May 2012, the Veteran was afforded a VA examination for his back. The examiner noted that due to the Veteran’s service-connected back condition, the Veteran’s walking was limited to one to two blocks and less than one hour during an eight-hour period, and that the Veteran had a limited ability to sit and stand at one time, in that he needed to use a cane and alternate between standing and sitting during an eight-hour period.

In a May 2012 joint buddy statement, the Veteran’s friends, F.P. and K.P., stated that the Veteran could no longer perform everyday body motions without assistance.

In May 2012, the Veteran’s former supervisor submitted a statement and noted that a few years prior to the Veteran’s retirement, he noticed a significant reduction in the Veteran’s job performance.

In a May 2012 Statement in Support, the Veteran recounted that his back condition began to worsen in 2004. The Veteran added that he decided to retire because the pain in his back prevented him from performing his work-related duties. 

A March 2013 VA treatment note indicates that the Veteran became angry and upset with a friend and had thoughts of hurting or killing his friend.

During a September 2016 Board hearing, the Veteran testified that he retired from his last employment in 2006 due to increasing back pain. 

Here, the evidence is at least in equipoise as to whether the Veteran’s service-connected disabilities cause him to be unable to secure and engage in types of employment at any exertional level from March 25, 2011. The record reflects that the Veteran’s PTSD and depressive disorder causes him problems with suspicion, hypervigilance, extreme anxiety, irritability, and concentration. Additionally, the Veteran’s PTSD causes him to have difficulty in establishing and maintaining work relationships. For example, the Veteran has consistently reported symptoms of irritability and hypervigilance. There is also evidence that the Veteran can be assaultive and abusive because the Veteran noted that he almost physically hit a physician that asked him to remove his cap. A March 2013 VA treatment note documents that the Veteran’s anger towards a friend resulted in thoughts of hurting or killing his friend. His former supervisor indicated that the Veteran’s angry moods and paranoia created cohesive problems with the other workers. Also, the Veteran reported that due to the pain from his service-connected back disability he retired in 2006. The Veteran’s account is supported by his former supervisor, who stated that a few years prior to the Veteran’s retirement in 2006, he noticed a significant reduction in the Veteran’s job performance. The Veteran’s friends commented on how the Veteran was unable to perform everyday body motions without assistance. The May 2012 examiner also noted that due to the Veteran’s back disability, his walking was limited to one to two block and less than one hour during an eight-hour period, and that the Veteran needed to alternate between standing and sitting during an eight-hour period. 

The Board acknowledges that the Veteran told the July 2011 VA examiner that his PTSD did not affect his employment and that the examiner indicated as a result that the Veteran did not contend his PTSD affected employment. However, the Veteran explained that he misunderstood the examiner and told the examiner that his PTSD did not have any effect on his employment because he was retired. Additionally, he did report during the examination that he had difficulty maintaining employment due to his suspiciousness and irritability. In any case, the ultimate question of whether a Veteran is capable of securing or following substantially gainful employment is an adjudicatory determination, not a medical one. See Geib v. Shinseki, 733 F.3d 1350 (Fed. Cir. 2013); Floore v. Shinseki, 26 Vet. App. 376 (2013). 

Based on the foregoing, the Board finds that the evidence is at least in equipoise as to whether the Veteran would be unable to obtain or maintain employment at most occupations due to his service-connected mental disability and back disability from an earlier effective date of March 25, 2011. The evidence discussed above reflects that the Veteran’s back disability would make it difficult for the Veteran to perform any occupational activities involving walking, standing, or sitting for prolonged periods. Moreover, symptoms of the Veteran’s PTSD would make him unable to complete work tasks reliably and productively, given his problems with suspicion, hypervigilance, extreme anxiety, irritability, concentration, and establishing and maintaining work relationships. As such, the Board resolves any reasonable doubt 

 

in the Veteran’s favor and concludes that entitlement to an earlier effective date of March 25, 2011, but no sooner, for the award of a TDIU is warranted. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. 

 

 

M. SORISIO

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board S. Patel, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.